SCHARF BROS. CO. (INC.) *v.* UNITED STATES (No. 3095)[1]

United States Court of Customs Appeals, November 19, 1928

*Barnes, McKenna & Halstead* (*Samuel M. Richardson* of counsel) for appellants.
*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler* and *Oscar Igstaedter*, special attorneys, of counsel), for the United States.

[1] T. D. 43089.

348

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The importation from Holland, rock-candy sticks or sugar sticks, entered at its United States value, was appraised at its foreign value by the local appraiser at the port of New York. Appeal was taken to the United States Customs Court, where the cause was tried by a single justice who affirmed the values found by the local appraiser. Appellant appealed to the second division of the Customs Court from the decision of the single appraising justice, which appeal resulted in a finding and judgment in favor of the Government and which judgment affirmed the appraisement made by the single appraising justice.

Appellants have appealed to this court from the decision of the court below and here present but one question for the decision of this court. Did the court below properly find from the record that there was a foreign market value for such or similar merchandise? It is conceded that there was no export value for the merchandise, and the controversy between the parties was as to whether there was a foreign value, both sides admitting that if there was no foreign value shown in the record, the merchandise was properly appraised at its United States value, as invoiced and entered.

The definition of foreign value is found in section 402 (b) of the Tariff Act of September 21, 1922, and is as follows:

The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which *such or similar merchandise* is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. (Italics ours.)

In reappraisement cases the statute requires the court below to state its action in a written decision and to set forth the facts upon which the findings are based and the reasons therefor. From the decision of the court below, evidently made in attempted compliance with the mandate of the statute to set "forth the facts upon which the finding is based and the reasons therefor," we quote the following:

First. That the importer is the shipper's sole and exclusive agent in the United States for this merchandise.

Second. That the importation consists of white and brown crystallized rock candy on strings.

Third. That in chemical composition it is similar to the rock candy sold or freely offered for sale for home consumption in Holland, the exported candy and that sold in Holland being made at the same time in the same vat and from the same material.

Fourth. That the market values of such or similar merchandise on the date of exportation were those returned by the appraiser, to wit: Fifty-one florins for the white and fifty florins for the brown rock candy.

Both sides to the controversy agree that to support the judgment of the court below it should have found as a fact that there was, at the time of exportation, a foreign value for the merchandise in dispute as defined by subdivision (b) of section 402, *supra*, and that one of the essential facts necessary to be found in finding foreign value was that "such or similar merchandise was freely offered for sale to all purchasers in the principal markets of the country from which exported in the usual wholesale quantities and in the ordinary course of trade," etc.

The trial of the cause in the court below narrowed down to but one issue: Was there, at the time of exportation, merchandise "similar" to the imported merchandise freely offered for sale for home consumption in Holland, it being conceded that there was no merchandise identical with the imported merchandise sold or offered for sale for such home consumption at the time of exportation. The law is too well settled to require citation that in reviewing a reappraisement judgment of the United States Customs Court it is the duty of this court, whose review is limited to questions of law only, to ascertain if there is any substantial evidence in the record supporting the essential facts found by it. If the court below did not find that there was such or similar merchandise sold or freely offered for sale for home consumption in Holland at the time of exportation, one of the essential facts to support its judgment would be absent from the record and under our decision in Downing & Co. v. United States, 15 Ct. Cust. Appls. 235, T. D. 42243, we would be compelled to remand the cause for a proper finding of facts. The findings are not clear, but we think, from the view we take of them, that they indicate that the court found that there was such or similar merchandise sold or freely offered for sale for home consumption in Holland at the time of exportation. True enough, the third finding, unless coupled with other findings in the decision, would not be sufficient to be regarded as a finding that the imported merchandise was similar to merchandise sold for home consumption. It will be noted that the third finding states "that in chemical composition it is similar to the rock candy sold or freely offered for sale for home consumption in Holland, the exported candy and that sold in Holland being made at the same time, in the same vat, and from the same material." If these were the only reasons why the court below determined that the merchandise sold in Holland for home consumption was similar to the imported merchandise, we would be compelled to disagree with it. It seems clear to us that a thing may be similar chemically and yet not similar within the meaning of the word as

used in section 402 (b), *supra*.  We feel that the decision as a whole,. when carefully considered, shows that the court below found that. there was a similar merchandise sold in Holland at the time of exportation.  What, if any, fact other than the chemical composition of the candy brought it to this conclusion we can not definitely ascertain from the decision.

We have examined the record carefully to ascertain if there is any substantial evidence to support the finding of the court below that there was a similar merchandise sold or freely offered for sale in Holland for home consumption, and we think there is such evidence, having in mind the meaning of the phrase "such or similar" as expressed in. the opinions of this court heretofore.

In *United States* v. *Irvin Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714, this court was called upon to determine whether a certain grade of plush sold in the home markets of Germany was similar to the merchandise in dispute.  This court said:

> The law does not use the words "such" and "similar" synonymously, but with differing meanings, and alternatively.  In our opinion, foreign value was to be ascertained, first, by "the market value, or the price  *  *  *  at which such," or the *identical* merchandise is offered for sale on the foreign markets, as provided by the statute, and, second, in the event that such merchandise is not so offered, then by "the market value or the price," at which *similar* merchandise is so offered.  If the word "similar" means no more than the word "such," then there is no reason for it being used in the statute.  To so construe it, is to lose sight entirely of the ordinary meaning of the word and to adopt a construction based upon the theory that Congress has employed useless and unnecessary language in drafting this act, which, under ordinary circumstances, we may not do.  *United States* v. *Post Fish Co.*, 13 Ct. Cust. Appls. 155, T. D. 41022.  "Similar" merchandise must be construed as different from "such" merchandise in order to give this statute full effect.  The extent and character of this difference it becomes our office to determine.  The Supreme Court said, in *Greenleaf* v. *Goodrich*, 101 U. S. 278 (283):

> > The statute does not contemplate that goods classed under the words "of similar description" shall be in all respects the same.  If it did, these words would be unnecessary.  They were intended to embrace goods like, but not identical with, delaines.  *  *  *

> In view of the common meaning of the word "similar" and of the authorities cited, we are of opinion, and so hold, that if goods are made of approximately the same materials, are commercially interchangeable, are adapted to substantially the same uses, and are so used, ordinarily they are similar, within the meaning of section 402 (b).  The importer or foreign manufacturer may not, by making a few changes in structure, or in giving the product a new name, or by restricting its sale to the American purchaser only, ipso facto remove his merchandise from section 402 (b), the foreign value provision.

In *United States* v. *Wecker & Co.*, 16 Ct. Cust. Appls. 220, T. D. 42837, this court said:

> The question of similarity is, in each case, to be measured by much the same homely rule that applies to the prospective customer who enters a store seeking-

some utilitarian article of a certain specified name and style; he finds the article requested is not in stock but that another article, of approximately the same price and which will perform the same functions, is capable of the same use and may be substituted therefor, is available. Such an article is a similar article, notwithstanding the price, the methods of construction, and the component materials may be somewhat different; but, for all utilitarian purposes, one is a substitute for the other. It is in this sense, we believe, that the word similar was used in said section 402 (b).

The undisputed proof in this record shows that the imported merchandise consists of sticks of rock candy about 2 feet long in two colors, white and brown, which are repacked in the United States in boxes containing sticks of from 9 to 11 inches long. The merchandise is a conglomeration of small crystals of sucrose united together, through which a light, colored string runs. It is manufactured in a tank 9 feet long, 4 feet high, and from $2\frac{1}{2}$ to 3 feet wide, across and through which strings are stretched about 2 inches apart. Into this tank is placed the melted sucrose in solution which remains for a period of from 14 to 16 days. The boiling of the sirup causes the sucrose particles to form on the strings in the shape of crystals one crystal ofttimes forming on another. A difference in the shape of the crystals and their arrangement on the string may result from length of time in the vat, the position of the string in the vat, or possibly from other causes. After the crystals have formed on the strings, they are taken loose from the vat in the shape of solid sticks of crystals. The crystals are white and almost transparent. Attached to the walls and bottom of the vat also are crystals which when broken loose are the same product chemically as the importation but which contain no strings and which are not in the form of sticks nor are the crystals of the same shape. This is known as "half and half." As we understand it, the latter produce is not sold in Holland nor is it any part of the shipment here in controversy. When the white strings of crystal have been removed from the vat, considerable of the sucrose solution remains in the vat and is used again with the result that the brown sticks are produced. It is conceded by both sides that the white and the brown imported articles are identical in everything but color. The proof in the record and the admissions of counsel in arguments in briefs and before this court are to the effect that the imported article is never sold nor used in Holland but that the rock candy which is used there and which is freely offered for sale is represented by Exhibit No. 2, submitted in the report by Assistant Customs Attaché Laughlin and that the same is made in the same kind of vats, by the same process, and out of the same material as the imported article, and that chemically the two products are identical, the difference being in the size of the crystals and in the fact that for the home market the crystals are separated and the strings broken before sale. The crystals of the

candy consumed in Holland are very much larger and more regular in form than those in controversy. In each instance both products are sold by the pound. It is agreed that the rock candy imported and the rock candy used in Holland is sold in drug stores and is used for the same and only purpose, to wit, when, in solution with something else, it is taken for colds.

We think the record shows indisputably that it costs a small amount more to produce the candy for sale in Holland in the form in which it is sold than it does to produce the imported candy and that it is sold in the home market at a slightly higher price than the price which importers paid for the imported merchandise.

We are of the opinion that the foregoing facts justify the conclusion that the rock candy sold and used in Holland is "similar" to the importation at hand. It is not contended that it is identical or "such" merchandise. The statute contemplates that "similar" merchandise will differ in some respects from the imported article. This court has long recognized the difficulty in making a hard and fast definition for the word "similar" which will always be a safe guide to customs officials in determining value. But, for the purpose of deciding the issues at hand, we think the views heretofore expressed by this court are sufficient and are controlling.

In *Irvin Massin & Bros., supra,* and *United States* v. *Wecker Co., supra,* it was held that if the two articles were of approximately the same value and would perform the same functions, were capable of the same use, and might be substituted for each other, these articles were similar even though the methods of construction and the component materials might somewhat differ. The facts at hand present more qualities of similarity than is specified in the above rule. There is but one use for both articles, to wit, for colds, and one will serve this purpose in exactly the same manner and with the same effect as the other. They are made by exactly the same methods, they are of approximately the same value, and they are identical in chemical composition. They have the same taste, color, and all their other qualities are similar or identical except in the size of the crystals and the removal of the strings, and possibly in their comparative merchantableness. These qualities, we think, make the two compared products commercially interchangeable and "similar" within the meaning of section 402 (b), *supra.* True enough, one buyer might prefer the smaller crystals and one buyer might desire the commodity with the strings broken in preference to the stick and vice versa. Yet, it is clear that there is not sufficient difference either in the cost, use, or the inherent qualities to prevent the substitution of one for the other.

While the comparative merchantableness of the two products or articles compared might, in some instances, have controlling influence

in determining commercial interchangeability, we can not believe that Congress, in providing that the price or value of a "similar" article should be taken for the value of the imported article, contemplated that an article would not be regarded as "similar" solely because of the whims or petty prejudices or like considerations of the trade. We can conceive of situations where trade prejudices might render an article less merchantable than another, even though they were identical in every particular.

It was urged by counsel in oral argument that the illustration of this court in the case of *Wecker & Co., supra*, showing what would be a similar article by the "homely rule applied to a prospective customer who entered a store, seeking some utilitarian article," was too broad in so far as the necessity of a prospective customer might occasion the acceptance of a leather coat or a cotton coat for a woolen one, since they served the same purpose. Counsel overlooked the fact that in the illustration use was not the only qualification. The expression used there was: "Another article, of approximately the same price, which will perform the same functions, is capable of the same use, and may be substituted therefor, is available."

We conclude, therefore, that the action of the appraiser, the single appraising justice, and division 2 of the United States Customs Court, in finding a value for the imported merchandise equal to the value or price at which similar merchandise was freely offered for sale to all purchasers in the principal markets of Holland, at the time of importation, was fully warranted by law. The judgment of the United States Customs Court is, therefore, *affirmed*.