UNITED STATES *v.* THOMAS & CO. (DEHLER-SIGNORET CORP.)
(No. 3603)[1]

---
[1] T.D. 46788.

United States Court of Customs and Patent Appeals, November 6, 1933

*Charles D. Lawrence*, Assistant Attorney General (*John F. Kavanagh*, special attorney, of counsel), for the United States.
*Brooks & Brooks* (*Frederick W. Brooks, Jr.*, of counsel) for appellee.

[Oral argument October 11, 1933, by Mr. Lawrence and Mr. Brooks, Jr.]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The United States has appealed from the judgment of the First Division of the United States Customs Court, which judgment affirmed the judgment of the single reappraising judge in sustaining the entered value of certain paper cops or tubes, and paper bobbins, imported from Czechoslovakia under the Tariff Act of 1930. The goods were appraised at their United States value, upon the theory that there was no foreign or export value. The lower court found that the entered value represented the export value and was at least as high as the foreign value.

The merchandise involved, paper tubes and bobbins, is used to hold yarn during the spinning, twisting or warping processes in the textile industry. The tubes involved are about 6½ inches long. All contain corrugated rings, but some contain more of such corrugations than others, and the corrugations in some extend lower down toward the base than in others. The tubes also vary slightly in their diameter; some are more tapered than others, some are wider at the base than others, and some are wider at the top and narrower at the base than others. The average diameter at the base is approximately three-fourths inch, while the average diameter at the top is less than one-half inch.

The taper and exact length required depend upon the shape of the attachment on the particular machine on which the tube is to be used. The corrugations, their number and location, depend upon the particular notion or idea of the textile manufacturer. Some of such manufacturers would conclude that a certain arrangement and number of corrugations bring the best results, while others might have entirely different ideas. The bobbins vary to the extent of three millimeters in diameter of the head or barrel.

Regardless of the said variation in the bobbins and said differences in the tubes, such variations make no difference in the price, and they are all invoiced as being of the same value and are sold at the same price in this country as are the comparable tubes sold in the country

of exportation. While there is no direct statement in the evidence to the effect that the cost of manufacture is the same, it seems fair to conclude from all the facts proven that there is little, if any, difference in the cost of production—certainly none that is material.

The record shows that the goods are purchased in this country by the Dehler-Signoret Corp. from the manufacturing concern in Czechoslovakia and that they are made to order in that country in accordance with the sample sent from this country, or in accordance with the specifications submitted.

In the trial before the single reappraising judge, it was the contention of the Government that there was no export value and no foreign value, and that the United States value found by the appraiser was the proper dutiable value. It was contended that there was no export value, because the importer was the sole agent of the foreign manufacturer.

While there is some testimony in the record to the effect that the Dehler-Signoret Corp. is the sole agent of the foreign manufacturer, there is an abundance of testimony to the contrary, and the court below found that the importer was not the sole agent in the United States in such a sense as to preclude a finding of export value. That question is not pressed here, and the sole question in the case is whether or not *similar* goods were sold in Czechoslovakia which met the requirement in the definition of foreign or export value in said act.

The court below, in deciding the case, said:

Notwithstanding all these differences all of the witnesses called both by the importers and the Government to testify in open court have agreed that these differences in taper and corrugation do not make any difference in the cost or price at which they are sold.

They may not be mechanically interchangeable as equipment for certain looms because they are not mechanically identical in construction, but they are commercially interchangeable because they are of the same commercial value, and it is commercial value which determines whether or not they are "similar merchandise" as required to meet the definition of foreign value in the statute.

The Government argues that the goods sold in Czechoslovakia are not similar to those imported for the reason that they are not commercially interchangeable, and challenges the above conclusion of law announced by the court to the effect that the goods are commercially interchangeable if they are of the same commercial value. The Government argues that the goods imported are not commercially interchangeable with the goods sold in Czechoslovakia for the reason that in some of the instances they would not fit all spindles, and that they would have, in some instances, more or less corrugations than those used on the spindles there.

The statement above quoted, if taken literally, probably might be regarded as a little broad, but we think the finding of the court below

was correct insofar as it sanctions the acceptance of equality of commercial value as an important element in determining when goods are "similar" within the meaning of sections 402 (c) and 402 (d) of the Tariff Act of 1930.

In several carefully considered decisions, this court has discussed at some length the question as to what constitutes "similar" merchandise within the meaning of the statutory provision then in controversy, which provision was identical with the one at bar as far as the issue here is involved. It will be sufficient here to cite and quote from only a few of such cases. The first decision on this subject by this court to which we wish to call attention is *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T.D. 42714. In that case it was said:

In view of the common meaning of the word "similar" and of the authorities cited, we are of opinion, and so hold, that if goods are made of approximately the same materials, are commercially interchangeable, are adapted to substantially the same uses, and are so used, ordinarily, they are similar, within the meaning of section 402 (b). The importer or foreign manufacturer may not, by making a few changes in structure, or in giving the product a new name, or by restricting its sale to the American purchaser only, *ipso facto* remove his merchandise from section 402 (b), the foreign-value provision.

The *Massin & Bros.* case, *supra*, was followed in *United States* v. *Wecker & Co.*, 16 Ct. Cust. Appls. 220, T.D. 42837, and owing to the particular facts in the *Wecker & Co.* case, the former holding as to what constituted similar goods was somewhat extended in the following language:

The individual differences between the foreign-market products and those imported in texture, workmanship, or structure might not be, in themselves, sufficient to prevent the goods from being similar. But, taken together, and added to a consideration of the facts, or lack of facts, shown by this record, we are unable to say the court below erred in finding the goods to be not similar. The question of similarity is, in each case, to be measured by much the same homely rule that applies to the prospective customer who enters a store seeking some utilitarian article of a certain specified name and style; he finds the article requested is not in stock but that another article, of approximately the same price and which will perform the same functions, is capable of the same use and may be substituted therefor, is available. Such an article is a similar article, notwithstanding the price, the methods of construction, and the component materials may be somewhat different; but, for all utilitarian purposes, one is a substitute for the other. It is in this sense, we believe, that the word similar was used in said section 402 (b).

In *United States* v. *Vietor & Achelis*, 17 C.C.P.A. (Customs) 412, T.D. 43864, the court said:

It clearly appears from the record that the imported ribbon, quality No. 90, differs considerably in construction from the ribbon, quality No. 9, freely offered for sale for consumption in Germany but not freely offered for sale for export to the United States. Quality No. 90 has artificial silk edges, while quality No. 9

has organzine silk edges. We have hereinbefore quoted the testimony of the witness Radcliffe, which clearly shows that the imported ribbon, quality No. 90, is inferior in other respects to quality No. 9. The witness also testified that the two qualities of ribbon were not commercially interchangeable. It further appears from the record that quality No. 9 ribbon, due to the difference in construction, is worth at least 20 per centum more than the imported ribbon, quality No. 90. There is some evidence to the effect that the difference in value is even greater than 20 per centum. No doubt the two qualities have similar uses, but it does not necessarily follow that they are "similar" for appraisement purposes. Suppose, for example, that two automobiles are imported into the United States. One is worth $5,000 and the other $1,000. They are used for similar purposes, but surely no one would have the temerity to suggest that they were "similar" for appraisement purposes.

The imported ribbon, quality No. 90, and the alleged similar ribbon, quality No. 9, may be adapted to substantially the same uses, but they are not made of approximately the same materials, nor are they commercially interchangeable. We hold, therefore, that the two qualities of ribbon are not "similar" for purposes of appraisement, and that there is substantial evidence in the record to support the judgment below. For the reasons stated the judgment is affirmed.

In the last-cited case, it will be noticed that the two classes of goods being considered were not regarded as commercially interchangeable and that there was at least a 20 per centum difference in their value. The court held that the goods were not similar.

In *Scharf Bros. Co., Inc.* v. *United States*, 16 Ct. Cust. Appls. 347, T.D. 43089, the question of similarity for duty-value purposes under section 402 (b) of the Tariff Act of 1922, arose with reference to rock candy sticks. The appeal in that case came to us under circumstances very similar to those at bar. The court below found, in substance, that the rock candy sold in Holland was similar to the importation because it was similar in chemical composition and both were made at the same time, in the same vat, and from the same material. This court went into the record and after citing and discussing the cases of *Irving Massin & Bros.*, and *United States* v. *Wecker & Co.*, *supra* found other elements of similarity and stated:

* * * The proof in the record and the admissions of counsel in arguments in briefs and before this court are to the effect that the imported article is never sold nor used in Holland but that the rock candy which is used there and which is freely offered for sale is represented by Exhibit No. 2, submitted in the report by Assistant Customs Attaché Laughlin and that the same is made in the same kind of vats, by the same process, and out of the same material as the imported article, and that chemically the two products are identical, the difference being in the size of the crystals and in the fact that for the home market the crystals are separated and the strings broken before sale. The crystals of the candy consumed in Holland are very much larger and more regular in form than those in controversy. In each instance both products are sold by the pound. It is agreed that the rock candy imported and the rock candy used in Holland is sold in drug stores and is used for the same and only purpose, to wit, when, in solution with something else, it is taken for colds.

We think the record shows indisputably that it costs a small amount more to produce the candy for sale in Holland in the form in which it is sold than it does

to produce the imported candy and that it is sold in the home market at a slightly higher price than the price which importers paid for the imported merchandise.

We are of the opinion that the foregoing facts justify the conclusion that the rock candy sold and used in Holland is "similar" to the importation at hand. It is not contended that it is identical or "such" merchandise. The statute contemplates that "similar" merchandise will differ in some respects from the imported article. This court has long recognized the difficulty in making a hard and fast definition for the word "similar" which will always be a safe guide to customs officials in determining value. But, for the purpose of deciding the issues at hand, we think the views heretofore expressed by this court are sufficient and controlling.

Other elements of similarity and dissimilarity are discussed in other cases but in deciding the issue at bar, it will not be necessary to discuss them here. See *United States* v. *Morganite Brush Co.*, 18 C.C.P.A. (Customs) 90, T.D. 44063.

It will be noticed that in the *Massin Bros.* case, *supra*, in determining what are similar goods, the court found that the goods under consideration were not similar for the reason that the two compared materials could not be used for the same purposes. The court, however, did hold that if goods were made of approximately the same materials, were commercially interchangeable, and were adapted to substantially the same uses and were so used, they would be regarded as "similar."

In the *Victor & Achelis* case, *supra*, one element of dissimilarity consisted in the difference in value of at least 20 per centum. Now, in the case at bar, we think the goods are composed of the same material, made in substantially the same way, and it is fair to assume that their cost of production does not materially vary by reason of the taper or corrugations. While the record shows that certain American manufacturers and Czechoslovakian manufacturers could not use on their particular spindles tubes having a taper not designed to fit the spindle of their machines, and that they would not accept, as a compliance with their orders, tubes made with a taper which did not fit, it also is shown that others, there and here, could use tubes with such a taper, and when used, all were used for the same purpose; that each of the compared articles is made from the same material, by the same processes, and when finished has no material differences which would render them dissimilar for valuation purposes. Whether goods sold in the foreign market are similar to those imported cannot always depend upon whether the foreign goods would be accepted as a compliance with an order by the user of the imported goods. That test might require that the goods be identical and the requirement of the statute is only that the goods be similar. Certainly the equality in value and similarity in cost of production, under the circumstances of this case, were very pertinent and material considerations in determining similarity.

In the example of the automobiles referred to in the *Vietor & Achelis case,* supra, the goods might be interchangeable in one sense and yet not be interchangeable or similar in a dutiable sense. In that instance, the goods were dissimilar, for one reason, because their values were materially different. In the *Irving Massin & Bros., Wecker & Co.,* and *Morganite Brush Co. cases,* supra, it was held, in substance, that the value of imported goods could not be determined by taking, as their value, the value of a somewhat similar article, and by deducting or adding to such value. In the *Scharf Bros. Co., Inc.,* case, *supra,* a slight difference in the cost of production was not permitted to be a bar to a finding of similarity.

Congress, by providing for the determination of the value of imported goods by accepting as such value the value of certain similar merchandise sold in the country of exportation, sought to provide a fair means of determining the value of certain importations, which ofttimes was difficult or impossible to ascertain, unless the value of a similar or comparable article was accepted as such. Frequently there was no article sold abroad which was identical with the imported article. But, if there was a similar article, the value of which was a fair value to be applied to the imported article, then that value should be taken.

The requirements of similarity under the similitude provisions of the various tariff acts, which provisions have reference to classification, should not be confused with the requirement of similarity for value purposes. It is obvious that an element or elements of similarity which justify the application of similitude in classification would fall far short of meeting the requirements of being similar for value purposes.

Congress could not have contemplated the acceptance of the value of an article which sold for the same price if they were wholly different in their character and use. The value of a steam engine might be the same as the value of an automobile, but certainly it could not be contended that the merchandise was "similar" merely because it sold for the same price or the cost of production was the same.

We think that the value of the said merchandise, sold in Czechoslovakia, as shown by the proof in this record, was a fair and proper value to be taken as the value of the imported merchandise, and that such merchandise should be regarded as similar to that which was imported, within the meaning of the statutory provision in controversy. The entered value was found to be equivalent to the export value. No higher value being shown than the entered value, the correct determination of the appraised value was reached in the decisions of the two reappraising tribunals below.

The judgment of the United States Customs Court is *affirmed.*

### CONCURRING OPINION

LENROOT, Judge, specially concurring: I concur in the conclusion reached by the majority, but I am of the opinion that the merchandise here involved is not commercially interchangeable with the merchandise sold in Czechoslovakia. I do not, however, think that commercial interchangeability is an indispensable element of similarity under the statute. The majority opinion is not clear to me upon this point.

In my opinion, if goods are made of approximately the same materials, are of the same approximate commercial value, are adapted to substantially the same uses, and are so used, then they are similar whether commercially interchangeable or not. The goods here in issue and the goods sold in Czechoslovakia are made of approximately the same materials, are approximately of the same commercial value, are adapted to substantially the same uses, and are so used, and are therefore similar within the statute, notwithstanding that, as above set forth, I do not believe them to be commercially interchangeable.