UNITED STATES *v.* BRIONES & CO., INC. (No. 3732)[1]

[1] T. D. 47158.

246

United States Court of Customs and Patent Appeals, May 31, 1934

Charles D. Lawrence, Assistant Attorney General (John F. Kavanagh, special attorney, of counsel), for the United States.

Barnes, Richardson, & Halstead (Samuel M. Richardson and Joseph Schwartz, of counsel) for appellee.

[Oral argument December 8, 1933, by Mr. Lawrence and Mr. Richardson]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court in reappraisement 104247–A.

The involved merchandise consists of salted anchovies. Some were imported in ½-kilo, some in 1-kilo, and the others in 2-kilo, tins.

The merchandise was entered at the following values: ½-kilo tins, 205 pesetas, 1- and 2-kilo tins, 190 pesetas. It was appraised by the local appraiser at the invoice values, the prices paid by the importer— 240 pesetas for that imported in ½-kilo tins, and 225 pesetas for that imported in 1- and 2-kilo tins, c.i.f. New York, less nondutiable charges.

The importer appealed to reappraisement.

On the trial before the associate judge sitting in reappraisement, the importer called four witnesses, Pedro J. Segui, A. J. Roncallo, Joseph Mendoza, and Mario A. Porazzi.

The Government introduced no evidence.

It appears from the evidence in the case that the imported merchandise was produced in Spain by Hijos DeCarlos Albo, and was known as the "Albo product"; that appellee acted as agent for the producer, and received a commission for its services; that, in June 1932, the producer and appellee entered into a contract for the sale by appellee of "Albo's salted anchovies" to purchasers in the United States at the following prices: 240 pesetas per 100 kilos for ½-kilo tins, and 225 pesetas per 100 kilos for 1- and 2-kilo tins; that the involved and like merchandise was sold by appellant in June 1932, to purchasers in the United States at the contract prices, for delivery in August, September, October, November, December 1932, and Jan-

uary 1933; that the involved merchandise was exported from Spain on September 21, 1932; that all of the salted anchovies produced by Albo in the year 1932, were sold not later than June of that year; that "Albo's salted anchovies" brought a higher price, 10 pesetas more, than the salted anchovies produced by other concerns in Spain; that such difference in prices was due to the reputation of "Albo's products"; that salted anchovies produced by other concerns in Spain were just as good as those produced by Albo; that the market prices for salted anchovies in Spain for export to the United States were much lower on September 21, 1932, the date of exportation of the involved merchandise, than in June of that year, the date of its purchase; that salted anchovies were being sold in September 1932, at prices ranging from 165 to 200 pesetas per 100 kilos for the ½-kilo tins, and from 150 to 180 pesetas per 100 kilos for the 1- and 2-kilo tins; that as Albo had sold, in June 1932, all salted anchovies produced by him in that year, his product was not being sold in September of that year; and that neither the involved nor similar merchandise was sold or freely offered for sale for consumption in Spain.

On this record the trial court held that salted anchovies were not sold nor freely offered for sale for consumption in Spain, and that the weight of the evidence sustained the entered values as the proper export and dutiable values of the merchandise.

On appeal by the Government, the Appellate Division of the Customs Court affirmed the judgment of the trial court.

The case seems to have been presented by the parties to the courts below on the theory that there were export values for the imported merchandise, but that there were no foreign values. The parties differed only as to whether the invoice prices, the prices at which the involved merchandise was sold by the importer, as agent of the producer in Spain, were the export values of the merchandise, as claimed by counsel for the Government, or whether the prices paid for alleged similar salted anchovies produced by other concerns in Spain and sold, on or about September 21, 1932, for export to the United States were the export values of the involved merchandise, as claimed by counsel for importer.

In this court, counsel for the Government stated in their brief that "Both parties agree that the dutiable value is the export value". Notwithstanding that statement, they contend that the court below "erred in not finding and holding that there *was no such or similar merchandise* sold or offered for sale for export on the date of exportation of the merchandise involved." (Italics ours.) Counsel further state, in their brief, that the issue in the case is whether the imported merchandise, which commands a higher price "by virtue of its brand and the reputation of the producer", is "similar to the merchandise of a brand which is not so well known and admittedly inferior."

We are frank to confess that we are not able to understand the position taken here by counsel for the Government. They first state that it is agreed by both parties that the dutiable values are the *export values*. They then contend that the court below erred in not holding that there was "no such or similar merchandise sold or offered for sale" in the principal markets of Spain for export to the United States on the date of the exportation of the involved merchandise. In other words, counsel agree that the export values are the dutiable values of the involved merchandise, and then argue that it had no export values on the date of its exportation. We may say, furthermore, that we are unable to agree with the statements of counsel for the Government that the alleged similar merchandise is "admittedly inferior" to that here involved.

It clearly appears from the record that, due to the reputation of the producer, the involved merchandise sold at higher prices, 10 pesetas more, in *"May or June"*, 1932, than were paid for salted anchovies produced by other concerns in Spain. (Italics ours.) It further appears that the producer of the imported merchandise did not sell salted anchovies in September 1932, as his entire stock had been sold not later than June of that year.

Section 402 (d) of the Tariff Act of 1930 defines the export value of imported merchandise to be "the market value or the price, *at the time of exportation of such merchandise to the United States*, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States", etc. (Italics ours.) The involved merchandise was purchased in June 1932, and exported on September 21, of that year. The "Albo products" were not being sold in September 1932. It is obvious, therefore, that there were no market values or prices for *the imported merchandise* at the time of its exportation to the United States. It having been established that there were no foreign values for the imported merchandise, the sole question in the case is whether salted anchovies, "similar" to those here involved, were freely offered for sale in the principal markets of Spain for export to the United States, on or about *September 21, 1932*. It clearly appears from the record that salted anchovies produced by concerns other than the producer of the involved merchandise, were sold in September 1932, at prices ranging from 165 to 200 pesetas per 100 kilos, packed in ½-kilo tins, and from 150 to 180 pesetas per 100 kilos, packed in 1- and 2-kilo tins.

In view of the fact that salted anchovies produced by Hijos DeCarlos Albo were not being sold in September 1932, the statements by appellant's witnesses, that the "Albo product" commanded a higher price, 10 pesetas more, than salted anchovies produced and

sold by other concerns in Spain, must have been based upon the theory that had it been sold in September, it would have sold at such higher prices. But whether that testimony be considered speculative or otherwise, we are of opinion that the following excerpt from our decision in the case of *Scharf Bros. Co., Inc.* v. *United States*, 16 Ct. Cust. Appls. 347, T.D. 43089, has particular application to the facts in the case at bar:

While the comparative merchantableness of the two products or articles compared might, in some instances, have controlling influence in determining commercial interchangeability, we can not believe that Congress, in providing that the price or value of a "similar" article should be taken for the value of the imported article, contemplated that an article would not be regarded as "similar" solely because of the whims or petty prejudices or like considerations of the trade. We can conceive of situations where trade prejudices might render an article less merchantable than another, even though they were identical in every particular.

We are of opinion that there is some substantial evidence of record to sustain the finding of the court below that the involved anchovies were "similar," within the meaning of section 402 (d), *supra*, to those sold in Spain in September 1932, for export to the United States.

The judgment is, therefore, *affirmed*.