H. J. HEINZ COMPANY *v.* UNITED STATES (No. 4858)[1]

United States Court of Customs and Patent Appeals, June 20, 1956

*Jerome G. Clifford* for appellant.

*Warren E. Burger,* Assistant Attorney General, *Richard E. FitzGibbon,* Chief, Customs Section (*Daniel I. Auster,* trial attorney, of counsel), for the United States.

[Oral argument April 11, 1956, by Mr. Clifford and Mr. Auster]

Before JOHNSON, Acting Chief Judge, and WORLEY, COLE, and JACKSON (retired), Associate Judges

JOHNSON, Acting Chief Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs

---

[1] C. A. D. 619.

Court, First Division, Appellate Term, A. R. D. 61, affirming the judgment of the trial court, 32 Cust. Ct. 633, affirming the values returned by the appraiser in two reappraisement appeals relating to importations of tomato pulp.

The facts, which are not in dispute, are as follows: The involved tomato pulp was manufactured in France by various firms and sold and shipped to H. J. Heinz Co., Ltd., London, England, a subsidiary of H. J. Heinz Company of Pittsburgh, Pennsylvania, for the sole and exclusive use of said English firm in the manufacture of tomato food preparations. This tomato pulp was then purchased by and shipped to appellant, H. J. Heinz Company of Pittsburgh. It is not disputed in the record that the tomato pulp was not originally destined for indirect shipment from France to appellant.

It appears from the record that the imported tomato pulp was produced from select tomatoes which were carefully cleaned, trimmed, and washed to reduce mould count and specks; that it was manufactured at the height of the tomato season to produce a good, red, ripe tomato color pulp having a sweet tomato flavor which was free of all bitter, fermented, scorched, metallic or other off color flavor; and that it was free from particles of sand, skin, leaves or other extraneous matter.

It is not in dispute that there is no tomato pulp similar to the imported merchandise commercially produced in England, nor is it disputed that the tomato pulp which is used in England is imported from France, Italy, Spain, and Portugal. The tomato pulp which is imported from these countries will be referred to as English home consumption tomato pulp, and it is not disputed that it is not of as high a quality as the imported Heinz pulp because the above-mentioned qualities of the Heinz pulp are not found in the English home consumption tomato pulp.

It is admitted by appellant, in affidavits which were submitted in evidence, that the English home consumption tomato pulp would not be acceptable to the Heinz Company for its products whereas the Heinz tomato pulp would be acceptable to the English manufacturers for use in their products. Thus, it is not disputed that the two qualities of tomato pulp are not mutually interchangeable.

The imported merchandise was appraised on the basis of cost of production in England, the country of exportation, under section 402 (f) of the Tariff Act of 1930, as amended. This appraisement was contested by appellant who urged that the correct basis of valuation was the foreign market value of "similar" tomato pulp, namely, the English home consumption tomato pulp, under section 402 (c) of the Tariff Act of 1930, as amended, or in the alternative, the cost of production in France, the country of production, under section 402 (f) of the Tariff Act of 1930, as amended.

The above-mentioned sections of the Tariff Act of 1930 read as follows:

SEC. 402. Value.

\*       \*       \*       \*       \*       \*       \*

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

\*       \*       \*       \*       \*       \*       \*

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise.

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

In the proceedings before the Customs Court the appraiser gave the following basis for appraising the merchandise on the basis of the cost of production in England:

\*       \*       \*       \*       \*       \*       \*

The Witness: The English Exporter was treated as a constructive manufacturer in this case, and the appraisement was on the basis of the cost of production, Section 402 (f) of the Tariff Act of 1930.

\*       \*       \*       \*       \*       \*       \*

The Customs Court, after reviewing the facts and the arguments which were presented, made the following findings of fact and conclusions of law:

On the record herein, we find as facts:

(1) That the merchandise in question consists of tomato pulp produced in France which was sold to H. J. Heinz Company, Ltd., London, England, and subsequently sold and shipped by the latter to the appellant herein, H. J. Heinz Company, Pittsburgh, Pa., U. S. A.

(2) That on or about the dates of exportation of the involved tomato pulp such or similar merchandise was not sold or freely offered for sale for home consumption in the principal markets of England, in the usual wholesale quantities and in the ordinary course of trade.

(3) That on or about the dates of exportation of said tomato pulp such or similar merchandise was not sold or freely offered for sale in the principal markets of England, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States.

(4) That such or similar merchandise was not freely offered for sale for domestic consumption, packed ready for delivery, in the principal markets of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade.

(5) That the cost of materials of, and of fabrication, manipulation or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration, plus the usual general expenses in the case of such or similar merchandise, plus the cost of containers, and plus an addition for profit was the values returned by the appraiser.

We conclude as a matter of law:

(1) That there is no foreign, export, or United States value for the merchandise herein, as those terms are defined in section 402 of the Tariff Act of 1930, as amended.

(2) That cost of production, as that value is defined in section 402 (f), Tariff Act of 1930, is the proper basis for determining the value of the instant merchandise.

(3) That such cost of production was the values returned by the appraiser.

Appellant contends on appeal that there is no substantial evidence to support the foregoing findings; that the English home consumption tomato pulp is "similar" to the imported Heinz pulp within the meaning of section 402 (c), *supra*, and that the imported merchandise should have been appraised on the basis of foreign value; or that in the alternative, the cost of production in France, the country of production, should be the basis for appraisement.

Appellee contends that there is substantial evidence to support the findings below; that the English home consumption tomato pulp is not "such or similar" to the imported Heinz tomato pulp, and that the price in England for English home consumption tomato pulp is inapplicable to the present importation; and that the cost of production of the Heinz tomato pulp in England, the country from which it was immediately exported, must be taken as the statutory cost of production since the imported pulp was not an importation from France to the United States.

In view of the foregoing, the first question we must consider on appeal is whether there is substantial evidence to support the findings of the tribunals below.

It is well settled that in reviewing a reappraisement judgment of the United States Customs Court it is the duty of this court, whose

review is limited to questions of law only in reappraisement matters, to ascertain if there is any substantial evidence in the record supporting the essential facts found by it. *Scharf Bros. Co., Inc.* v. *United States,* 16 Ct. Cust. Appls. 347, T. D. 43089. If there is substantial evidence in the record to support the finding of the Customs Court in reappraisement matters, we will not disturb such finding. See *United States* v. *Wecker & Co.,* 16 Ct. Cust. Appls. 220, 222, T. D. 42837, for a discussion of the rationale behind this rule.

As noted above, the imported merchandise was appraised on the basis of the *constructive* cost of production in England. However, it is undisputed in the record that no tomato pulp is produced in England, the needs for English home consumption being imported from abroad. In support of its argument that there is substantial evidence to support the finding below, appellee urges that the English home consumption tomato pulp is not similar to the imported Heinz pulp. However, we are at a loss to see how this lack of similarity, even if true, can be considered to be substantial evidence to support a finding that the constructive cost of production in England is proper.

It is not apparent from the record how the appraiser arrived at the value which he determined to be the constructive cost of production in England. It is to be noted that section 402 (f), *supra,* recites that the cost of production shall be the sum of " (1) The cost of materials of, and of fabrication, manipulation, or other processes employed in manufacturing or producing such or similar merchandise * * * (2) The usual general expenses * * * in the case of such or similar merchandise * * * (4) An addition for profit * * * equal to the profit which is ordinarily added * * * by *manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind."* [Italics added.] Since it is undisputed in this case that there is no *production* of the imported (or similar) merchandise in England, the country of exportation, the *constructive* cost of production, as used in the present case, necessarily means the amount it would cost to produce the imported merchandise based on the hypothetical cost of materials, the hypothetical cost of fabrication, the hypothetical cost of manipulation, the hypothetical general expenses, and the hypothetical profits. We think it is far too speculative to be realistic to use a constructive cost of production based on the foregoing hypothetical factors, and we know of no prior decided case of our court which has affirmed such an appraisement.

We are therefore of the opinion that not only is there no substantial evidence to support the findings below, but there is no evidence whatsoever to support them.

We will now proceed to analyze appellant's second contention, namely, that the English home consumption tomato pulp is "similar"

to the imported tomato pulp within the meaning of section 402 (c), *supra*, and the latter should therefore have been appraised on the basis of foreign value. The facts in this case which relate to the characteristics of the English home consumption tomato pulp and the imported Heinz tomato pulp are not in dispute. The determination of the meaning of the word "similar" as it appears in section 402 (c), *supra*, is a matter of law. Therefore the question before us consists of interpreting the statute in the light of the undisputed facts, and, as such, is a matter of law which is within our jurisdiction on appeal.

Cases which are relevant to the interpretation of the term "similar" as it appears in section 402 (c), *supra*, have been before our court many times in the past. In *Scharf Bros. Co., Inc.* v. *United States*, *supra*, we had before us the question of what the word "similar" meant as it was used in section 402 (b) of the Tariff Act of 1922. [It is to be noted that section 402 (b) *supra*, differs from section 402 (c), *supra*, only in that it does not contain the words "for home consumption."] In the above-mentioned case we reviewed the authorities as follows:

In *United States* v. *Irvin Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714, this court was called upon to determine whether a certain grade of plush sold in the home markets of Germany was similar to the merchandise in dispute. This court said:

The law does not use the words "such" and "similar" synonymously, but with differing meanings, and alternatively. In our opinion, foreign value was to be ascertained, first, by "the market value, or the price * * * at which such," or the *identical* merchandise is offered for sale on the foreign markets, as provided by the statute, and, second, in the event that such merchandise is not so offered, then by "the market value or the price," at which *similar* merchandise is so offered. If the word "similar" means no more than the word "such," then there is no reason for it being used in the statute. To so construe it, is to lose sight entirely of the ordinary meaning of the word and to adopt a construction based upon the theory that Congress has employed useless and unnecessary language in drafting this act, which, under ordinary circumstances, we may not do. *United States* v. *Post Fish Co.*, 13 Ct. Cust. Appls. 155, T. D. 41022. "Similar" merchandise must be construed as different from "such" merchandise in order to give this statute full effect. The extent and character of this difference it becomes our office to determine. The Supreme Court said, in *Greenleaf* v. *Goodrich*, 101 U. S. 278 (283):

The statute does not contemplate that goods classed under the words "of similar description" shall be in all respects the same. If it did, these words would be unnecessary. They were intended to embrace goods like, but not identical with, delaines. * * *

In view of the common meaning of the word "similar" and of the authorities cited, we are of opinion, and so hold, that if goods are made of approximately the same materials, are commercially interchangeable, are adapted to substantially the same uses, and are so used, ordinarily they are similar, within the meaning of section 402 (b). The importer or foreign manufacturer may not, by making a few changes in structure, or in giving the product a new name, or by restricting its sale to the American purchaser only, ipso facto remove his merchandise from section 402 (b), the foreign value provision.

In *United States* v. *Wecker & Co.*, 16 Ct. Cust. Appls. 220, T. D. 42837, this court said:

The question of similarity is, in each case, to be measured by much the same homely rule that applies to the prospective customer who enters a store seeking some utilitarian article of a certain specified name and style; he finds the article requested is not in stock but that another article, of approximately the same price and which will perform the same functions, is capable of the same use and may be substituted therefor, is available. Such an article is a similar article, notwithstanding the price, the methods of construction, and the component materials may be somewhat different; but, for all utilitarian purposes, one is a substitute for the other. It is in this sense, we believe, that the word similar was used in said section 402 (b).

In *United States* v. *Thomas & Co.*, 21 C. C. P. A. (Customs) 254, 260, T. D. 46788, the court gave the following discussion of how the term "similar" should be applied.

Congress, by providing for the determination of the value of imported goods by accepting as such value the value of certain similar merchandise sold in the country of exportation, sought to provide a fair means of determining the value of certain importations, which ofttimes was difficult or impossible to ascertain, unless the value of a similar or comparable article was accepted as such. Frequently there was no article sold abroad which was identical with the imported article. But, if there was a similar article, the value of which was a fair value to be applied to the imported article, then that value should be taken.

It can readily be seen from the foregoing judicial constructions which have been given to the word "similar" that the imported merchandise does not have to be identical to the merchandise which is offered for home consumption in the foreign market in order for an appraisement to be made on the basis of foreign value.

In the *Wecker* case, *supra*, a relatively liberal interpretation of the term "similar" was given, as noted above. Applying this criterion to the instant case it is our opinion that if a person desiring tomato pulp of the Heinz quality could not obtain it, he would of necessity have to regard as a substitute the English home consumption pulp which is of "approximately the same price and will perform the same functions, is capable of the same use, and may be substituted therefor * * *." We think that the English home consumption pulp is "similar" to the Heinz pulp, in the words of the *Wecker* case, *supra*, "* * * notwithstanding the price, the methods of construction, and the component materials may be somewhat different; but for all utilitarian purposes, one is a substitute for the other. * * *"

In the *Massin* case, *supra*, the court set forth the following criterion:

* * * if goods are made of *approximately* the same materials, are commercially interchangeable, are adapted to the same uses, and are so used, ordinarily they are similar within the meaning of section 402 (b). * * * [Italics added.]

This criterion was adopted in the *Scharf* case, *supra*, as discussed in detail below. Applying this criterion to the present case, it can be seen that the Heinz pulp and the English home consumption pulp "* * * are made of approximately the same materials, * * * are

adapted to the same uses, and are so used * * *." It is urged by the appellee, that they are not "commercially interchangeable." Evidently this is based on the statement made in one of appellant's affidavits that it does not consider the English home consumption pulp a satisfactory substitute for its own high quality tomato pulp. We do not consider appellant's preference to be the ultimate criterion of "commercial interchangeability," as this term has been defined by the courts. In *United States* v. *Thomas & Co., supra*, we held that certain imported bobbins were "similar" to bobbins sold in the country of exportation notwithstanding that their differences in structure did not render them interchangeable. The criterion of "commercial interchangeability" which was set forth in the *Massin* case, *supra*, has obviously been enlarged in subsequent decisions of our court, and we can see no reason for not doing so here in meeting the facts of this case.

In *Scharf Bros. Co., Inc.* v. *United States, supra*, the question before the court was whether imported rock candy which was in the form of sticks about two feet long was similar to rock candy (which was used in Holland, the country of exportation) which was produced from the sticks by separating the crystals and breaking the strings on which they were formed. The court felt that these items were "similar" within the meaning of the statute and stated:

We think the record shows indisputably that it costs a small amount more to produce the candy for sale in Holland in the form in which it is sold than it does to produce the imported candy and that it is sold in the home market at a slightly higher price than the price which importers paid for the imported merchandise.

We are of the opinion that the foregoing facts justify the conclusion that the rock candy sold and used in Holland is "similar" to the importation at hand. It is not contended that it is identical or "such" merchandise. The statute contemplates that "similar" merchandise will differ in some respects from the imported article. This court has long recognized the difficulty in making a hard and fast definition for the word "similar" which will always be a safe guide to customs officials in determining value. But, for the purpose of deciding the issues at hand, we think the views heretofore expressed by this court are sufficient and are controlling.

In *Irvin Massin & Bros., supra*, and *United States* v. *Wecker Co., supra*, it was held that if the two articles were of approximately the same value and would perform the same functions, were capable of the same use, and might be substituted for each other, these articles were similar even though the methods of construction and the component materials might somewhat differ. The facts at hand present more qualities of similarity than is specified in the above rule. There is but one use for both articles, to wit, for colds, and one will serve this purpose in exactly the same manner and with the same effect as the other. They are made by exactly the same methods, they are of approximately the same value, and they are identical in chemical composition. They have the same taste, color, and all their other qualities are similar or identical except in the size of the crystals and the removal of the strings, and possibly in their comparative merchantableness. These qualities, we think, make the two compared products commercially interchangeable and "similar" within the meaning of section 402 (b), *supra*. True enough, one buyer might prefer the smaller crystals and one buyer might desire the commodity with the strings broken in preference to the stick and vice versa.

Yet, it is clear that there is not sufficient difference either in the cost, use, or the inherent qualities to prevent the substitution of one for the other.

While the comparative merchantableness of the two products or articles compared might, in some instances, have controlling influence in determining commercial interchangeability, we can not believe that Congress, in providing that the price or value of a "similar" article should be taken for the value of the imported article, contemplated that an article would not be regarded as "similar" solely because of the whims or petty prejudices or like considerations of the trade.

The *Scharf* case is analogous to the present case in the sense that it was found by the court that the imported merchandise was similar to other merchandise which was used as a basis for valuation in spite of the fact that there was a difference in price between the two types of merchandise due to a difference in the cost of production. We think that this same reasoning should apply to this case in the sense that the imported merchandise should have been appraised on the basis of the "similar" English home consumption tomato pulp notwithstanding that the latter is sold at a lower price.

In view of the foregoing determinations made by our court relative to the meaning of the term "similar" as it appears in the tariff act, we are of the opinion, for the foregoing reasons, that the imported tomato pulp is "similar" to the English home consumption tomato pulp and should have been appraised accordingly. As we interpret the pertinent portions of section 402, *supra*, it is, in our opinion, far more logical to appraise the imported merchandise on the basis of the cost of the "similar" English home consumption tomato pulp notwithstanding the difference in cost between the two than to base the valuation on a *constructive* cost of production which is inherently based on speculative and hypothetical factors.

Since we have determined that the imported tomato pulp is "similar" to the English home consumption tomato pulp, and that the correct basis of valuation is the foreign market value under section 402 (c) of the Tariff Act of 1930, we find it unnecessary to consider appellant's above-noted alternative contention.

For the above reasons, the judgment below is *reversed* and the case is *remanded* for further action not inconsistent with this opinion.

JACKSON, Judge, retired, recalled to participate.

O'CONNELL, J., because of illness, did not participate in the hearing or decision of this case.