MUTUAL SUPPLY CO. *v.* UNITED STATES (No. 4602)[1]

United States Court of Customs and Patent Appeals, June 30, 1950

*Lawrence, Tuttle & Harper* (*Lawrence A. Harper* and *George R. Tuttle* of counsel) for appellant.

*David N. Edelstein*, Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

[Oral argument April 11, 1950, by Mr. Tuttle and Mr. Weeks

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

WORLEY, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, in reappraisements Nos. 134781–A, 126627–A, and 130413–A, overruling the judgments of the single judge sitting in reappraisement. Reappraisement No. 134781–A was reported in Reap. Dec. 6809. By stipulation of counsel and approval of the court, reappraisements Nos. 126627–A and 130413–A, Reap. Dec. 6806, were incorporated as part of the record herein and a single judgment was rendered by the appellate division of the Customs Court, one judge dissenting. This appeal is from that single judgment and will be treated accordingly.

The merchandise consists of canned hokkigai clams exported from Japan and entered at the port of San Francisco, California, during the month of September in the years 1937, 1938, and 1939 and was

[1] C. A. D. 437.

appraised by the local appraiser on the basis of the American selling price under section 402 (g) of the Tariff Act of 1930. The appraiser found that the foreign article was like or similar to the whole butter clam put up by packers on the Pacific coast.

By virtue of a proclamation of the President of the United States dated May 1, 1934, pursuant to section 336 of the Tariff Act of 1930, the rate of duty on razor clams was decreased and the rate of 35 per centum ad valorem was proclaimed on "clams other than razor clams, and clams in combination with other substances (except clam chowder), packed in air-tight containers," upon the American selling price (T. D. 47031, 65 Treas. Dec. 736).

So far as is pertinent to the issues in the present appeal, section 336, *supra*, reads:

SEC. 336. EQUALIZATION OF COSTS OF PRODUCTION.

(a) CHANGE OF CLASSIFICATION OR DUTIES.—In order to put into force and effect the policy of Congress by this Act intended, the commission * * * shall investigate the differences in the costs of production of any domestic article and of any like or similar foreign article. * * * The commission shall report to the President the results of the investigation and its findings with respect to such differences in costs of production. * * *

(b) CHANGE TO AMERICAN SELLING PRICE.—If the commission finds upon any such investigation that such differences can not be equalized by proceeding as hereinbefore provided, it shall so state in its report to the President and shall specify therein such ad valorem rates of duty based upon the American selling price (as defined in section 402 (g)) of the domestic article, as it finds shown by the investigation to be necessary to equalize such differences. * * *

American selling price is defined in subsection (g) of section 402 of the Tariff Act of 1930 as follows:

SEC. 402. VALUE.

\* \* \* \* \* \* \*

(g) AMERICAN SELLING PRICE.—The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

The single judge found that there was no domestic article like or similar to the imported article and it, therefore, was not within the purview of the Presidential proclamation; and that the merchandise was properly dutiable at export value under subsection (d) of the Tariff Act of 1930 which reads as follows:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to

all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The single judge, referring to clams as delicacies, further held that in the comparison of two such foodstuffs, characteristics involving taste, appearance, and odor had a very vital bearing on the value of the respective items, and he was of opinion that the hokkigai clam and the whole butter clam differed so significantly as to preclude a finding of similarity for the application of the Presidential proclamation and the provisions of section 402 (g), *supra*. Judgment was entered accordingly.

The appellate division of the Customs Court, on appeal, reversed the judgment of the trial court, holding that the two types of clam were like or similar, and remanded the case to the trial court for the purpose of considering and weighing the evidence with a view to arriving at the correct American selling price for the imported merchandise. In setting forth the facts upon which the findings were based, in conformity with the statute in reappraisement cases, the court stated:

1. That the imported merchandise consists of canned clams known as hokkigai clams.

2. That the imported canned clams were exported from Japan and entry thereof made at the port of San Francisco during the month of September in the years 1937, 1938, and 1939.

3. That these canned clams were appraised on the basis of the American selling price, as provided in section 402 (g) of the Tariff Act of 1930.

4. That the American clam that was selected by the appraiser as being like or similar to the imported clam was a whole butter clam handled by Guy P. Halferty & Co. of Seattle, Wash.

5. That the imported hokkigai clam and the whole butter clam handled by Guy P. Halferty & Co. of Seattle, Wash., are in fact like or similar within the meaning of the term as used in section 336 of the Tariff Act of 1930.

A petition for rehearing was filed on behalf of the importer and was denied. The instant appeal to this court followed.

The sole issue before this court is whether there is any substantial evidence to support the judgment of the court from which the appeal was taken. It was agreed by counsel for the respective parties that the invoice value represents the export value as defined in section 402, *supra*, and that there was not a higher foreign value for such or similar merchandise at the time of exportation.

It is the law in reappraisement cases that if there be any substantial evidence in the record to support the finding of the Customs Court in reappraisement matters, we have no authority to disturb such finding. *United States* v. *Eurasia Import Co., Inc.*, 33 C. C. P. A. (Customs)

123, 125, C. A. D. 326. It is well known that in reappraisement cases, this court is not charged with the duty of weighing the testimony and determining whether a finding of fact by the Customs Court is in accord with or against the weight of the evidence. It is only concerned with the question of whether there is any substantial evidence to support such finding.

Counsel for both parties introduced the testimony of a large number of witnesses but, in view of our conclusion, it is not deemed necessary to review the testimony in detail. It appears, and in our opinion it is substantial evidence as it was held to be by the appellate division, that the hokkigai clam is found in the waters of the North Pacific and sometimes in the waters of Puget Sound; that the physical appearance of the hokkigai clam and the whole butter clam is very similar except for the pink color of the foot of the *Spisula* (hokkigai) contrasted with the cream or gray color of the foot of the *Saxidomous* (butter clam); that both are clean; that the select butter clam is similar in shape to the hokkigai clam; and that the two clams are competitive.

This court, of course, recognizes the difficulty of laying down a hard and fast rule which will always govern the interpretation of "like" or "similar" in its application to various products. *Scharf Bros. Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 347, 352, T. D. 43089. Recognizing this difficulty, we quote from our opinion in the case of *United States* v. *Wecker & Co.*, 16 Ct. Cust. Appls. 220, 225, T. D. 42837, where we held:

* * * The question of similarity is, in each case, to be measured by much the same homely rule that applies to the prospective customer who enters a store seeking some utilitarian article of a certain specified name and style; he finds the article requested is not in stock but that another article, of approximately the same price and which will perform the same functions, is capable of the same use and may be substituted therefor, is available. Such an article is a similar article, notwithstanding the price, the methods of construction, and the component materials may be somewhat different; but, for all utilitarian purposes, one is a substitute for the other. It is in this sense, we believe, that the word similar was used in said section 402 (b).

The appellate division of the Customs Court, in its decision, stated:

In reaching our conclusion in this case, we have not overlooked or failed to give consideration and weight to much testimony in the record tending to show that the hokkigai clam and the whole butter clam are not like or similar; that the whole butter clam was never sold in Japanese stores; and that the Japanese people ate only the Japanese clam, whether it be the hokkigai clam or some other species. Under the facts and circumstances of this case, we do not consider too seriously the two latter factors.

Upon a full consideration of the entire record, we are satisfied that, notwithstanding the fact that the price, the methods of construction, and the component materials in the hokkigai clam may be somewhat different from those same elements appearing in the whole butter clam, for all utilitarian purposes one is a substitute for the other; the two will perform the same functions, are capable of the same use, and may be substituted, one for the other.

We have given careful consideration to the testimony in the record and to the briefs of counsel for the parties, and are of opinion that there is substantial evidence to support the judgment of the appellate division of the Customs Court.

For the foregoing reasons the judgment of the United States Customs Court is *affirmed*.