UNITED STATES *v.* HENSEL, BRUCKMANN & LORBACHER, INC.

**No. 5161.**—Invoices dated Krefeld, Germany, December 8, 1936, etc.
     Certified December 16, 1936, etc.
     Entered at New York January 4, 1937, etc.
     Entry No. 796148, etc.

### Third Division, Appellate Term

(Decided March 11, 1941)

*Webster J. Oliver*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the appellant.

*Puckhafer, Rode & Rode* (*John D. Rode* of counsel) for the appellee.

Before CLINE, EVANS, and KEEFE, Judges; EVANS, J., not participating

KEEFE, Judge: This application for review involved certain turned and unturned steel tubing composed of a special steel alloy with chromium, and comprises fifty-six appeals for reappraisement.

The merchandise was entered and appraised on the basis of the United States value. Upon deducting the charges the appraiser returned the value as follows:

| | | | |
|---|---|---|---|
| Steel tubing, geschalt or turned | $0.0722 per pound |
| " " not turned | .0486 " " |
| " " " " | .0592 " " |
| " " " " | .0618 " " |
| " " with thick walls | .1115 " " |

This is the second time these reappraisements have come before this court for review. The single judge upon the evidence submitted held that the tubing was subject to a United States value; that such value for turned tubing was 8½ cents per pound and the unturned

tubing 7½ cents per pound, with charges deducted. See Reap. Dec. 4209. On appeal for review to this division of the court, the judgment of the trial court was reversed and the values found by the appraiser sustained as presumptively correct. See Reap. Dec. 4376. A rehearing was later granted and upon reconsideration it was held that the trial court erred in manner following: First, in failing properly to determine the United States value of the merchandise, and second, in admitting in evidence certain exhibits Nos. 22, 23, 24, and 25, over objection of Government counsel. For the foregoing reasons the decision of the trial court was reversed and the reappraisements were remanded for all purposes for a retrial of the issues. See Reap. Dec. 4523.

When the case came before the trial court upon remand counsel for the plaintiff in his opening statement stated that in view of the decision of the appellate court in the case of *Stern Hat Co.* v. *United States*, 26 C. C. P. A. 410, C. A. D. 48, the United States value of the merchandise involved herein could no longer be considered as the proper basis of determining the value of the merchandise for duty purposes and that consequently the cost of production became the proper basis of value. The record previously made in the former case was thereupon incorporated herein.

To establish that the cost of production was the proper basis of value and that there was no United States value, we summarize the testimony of plaintiff in support thereof. The evidence was to the effect that the sole agent in the United States who handles steel tubing from the German manufacturers took orders from his seven customers in the United States for steel tubing having certain specifications; that none of the customers had the same requirements as to the size of tubing or as to the composition of the special steel from which said tubing was made; that the manufacturer shipped all orders for tubing to the agent and it was then delivered by him from the dock to the customer; that the tubing was not kept on hand or in stock by the American agent, and because each customer had different requirements as to the hardness of the material, the size, the length of the tubing, and the tolerance specifications, tubing specially manufactured for the requirements of one manufacturer could not be sent to another customer, and that therefore the agent may not dispose of the tubing in any manner other than to the customer who ordered it. It was further established that the plaintiff has never had orders for tubing from any two of his customers that had the same requirements, the merchandise for each customer being made specially by the manufacturer, and that it takes from 5 weeks to 3 months to fill an order. In obtaining orders for steel tubing, the agent does not use either catalogs or samples and no advertising matter offering steel tubing of any kind was sent out to the trade generally in the

United States; that there has never been any such or similar steel tubing previously imported offered for sale, packed ready for delivery, during the period covering the importations herein; that the manufacturer of the steel tubing in Germany does not freely offer for sale for export to countries other than the United States any steel tubing such as or similar to that imported herein. It further appears from the evidence that there are no standard steel tubings on the market and that there are variations in the chemical composition of the steel tubing for each specific customer; that steel contains carbon, manganese, silicon, phosphorus and sulphur and when alloyed therewith, chromium, but each customer purchases tubing of a different composition as well as varying inside and outside dimensions, but that the different compositions and dimensions of the tubing do not affect the price. In addition to the foregoing testimony the plaintiff offered in evidence three affidavits in support of the cost of production of the involved tubing. These affidavits disclose the cost of production for the merchandise in question as follows:

|  | Black or unturned tubing | Turned tubing |
|---|---|---|
| Cost of material | 12. | 12. |
| Cost of labor | 9. 80 | 11. 65 |
| General Expenses | 2. 65 | 2. 85 |
| Cost of making merchandise ready for shipment to the United States | 1. 00 | 1. 00 |
| Profit | 2. 45 | 2. 65 |
| Total | RM 27. 90 per 100 kos. | RM 30. 15 per 100 kos. |

The Government objected to the admission of the affidavits and cited the provisions of section 402 (b) of the Tariff Act of 1930 excluding affidavits executed outside of the United States by any person who fails to permit a Treasury attaché to inspect his books, papers, records, accounts, documents, or correspondence, pertaining to the value of such merchandise. The trial court overruled the objection, being of the opinion that the reasons given by the foreign manufacturer for not disclosing the particular specifications contained in the orders were justified. The documents were, therefore, admitted in evidence by the court and marked exhibits 26, 27, and 28.

The report of the Treasury representative was offered in evidence and admitted as exhibit 29. This report recites that as a result of his investigation the Treasury representative stated that the merchandise sold in Germany and in other countries is not similar to the tubing shipped to the United States; that the tubing shipped to this country is specially made for the American market and is manufactured after the receipt of the order. In ordering the investigation the Treasury representative was notified that advances had been made on the basis of the United States selling price to the greatest number

of customers and that as the importer claims that 20 tons constituted a usual wholesale quantity and—

As a lesser amount may be usual wholesale quantity in foreign market or to countries other than the United States, it is important that all sales and offers for sale which are available be analyzed.

The Treasury representative therefore was instructed to obtain an analysis of sales to the end of determining the usual wholesale quantities in which the tubing was sold. The manufacturer would not permit the Treasury representative to inspect the books of the company because the German tubing was different from that imported to the United States and for the further reason that the business transactions in Germany differed, thus making a comparison difficult, and that the tubings in question were not the usual commercial articles, being made according to detailed specifications as to composition, hardness, sizes, etc., as to which the manufacturer is pledged to keep secret. Because of the secret specifications various samples of tubing were not furnished. The manufacturer, however, disclosed to the special agent that there are actually three major classes of steel tubing, to wit, the turned, the not turned, and tubing with thick walls; that only three orders were placed for thick-walled tubings at a price of 16½ cents per pound; that the thin tubings are higher in price as tubings with thick walls require more raw materials while the thin tubings require more skilled labor and careful production. In respect to the tubing sold to various customers in the United States the manufacturer stated that the material for each customer must be specially smelted and it is impossible to use the left-overs from a small order to meet the needs of another customer; that material for a German customer may not be used for an American customer because difference in the finish necessitates a totally different tolerance; that orders for each customer in the various countries differ as to specifications, dimensions, tolerance, and finish.

On the evidence presented the trial court found that the merchandise consisted of steel tubing of two kinds, to wit, the turned and the unturned; that some of the tubing has thick walls which tubing costs less to produce than the thin-walled tubing; that such or similar merchandise is not sold or freely offered for sale for home consumption in Germany nor for export to countries other than the United States; that all of such merchandise is specially made by the German manufacturer for each of the plaintiff's American customers according to separate and distinct specifications which differ from tubing made for other customers; that the plaintiff is the exclusive agent for the German manufacturer and delivers the steel tubing made for each customer directly to said customer upon arrival in the United States; that the plaintiff keeps no stock on hand for sale or otherwise, simply acting as agent of the German manufacturer in obtaining and for-

warding for execution and delivery orders for steel tubing according to specifications.

Upon the record the court below held that there was no foreign, export, or United States value of said merchandise and that the proper basis for determining its dutiable value is the cost of production, and found the cost of production to be the same as that disclosed by the affidavits of the foreign manufacturer.

The Government in the action before us has appealed from the decision of the trial court and claims in twenty-one assignments of error that the trial court erred, principally contending that the presumption of correctness of the appraiser's findings should have been sustained; that the affidavits relative to cost of production were not admissible in evidence because of the prohibition prescribed in section 402 (b); that even though such affidavits were admissible they do not constitute proof of cost of production for all of the reappraisements under consideration, and that there is no proof that there is not a foreign value for the merchandise.

We have carefully considered the evidence before the trial court and we are oft he opinion that the record establishes that the particular tubing here in question is not sold in the foreign home market and because of the peculiar nature of the merchandise there is no United States value therefor as the basis for finding such value is defined in the case of *Stern Hat Co.* v. *United States,* 26 C. C. P. A. 410, C. A. D. 48. We, therefore, are of the opinion that the cost of production is the proper basis of appraisement.

The Government contends that the evidence submitted in proof of the cost of production herein should have been rejected by the trial court for the reason that a decision of the appraiser that the foreign value cannot be satisfactorily ascertained shall not be subject to review in reappraisement proceedings under section 501, but in accordance with the provisions of section 402 (b), providing that affidavits executed outside of the United States shall not be admitted in evidence if executed by any person who fails to permit a Treasury attaché to inspect his books, etc., pertaining to the value of such merchandise.

The section partly quoted by Government counsel provides as follows:

SEC. 402. VALUE.

\*       \*       \*       \*       \*       \*       \*

(b) REVIEW OF APPRAISER'S DECISION.—A decision of the appraiser that foreign value, export value, or United States value can not be satisfactorily ascertained shall be subject to review in reappraisement proceedings under section 501; but in any such proceeding, an affidavit executed outside of the United States shall not be admitted in evidence if executed by any person who fails to permit a Treasury attaché to inspect his books, papers, records, accounts, documents, or correspondence, pertaining to the value or classification of such merchandise.

Section 402 (b) withdraws the permission granted in section 501, allowing the admission of affidavits in evidence before this court in proof of value, where a foreign manufacturer refuses to allow an inspection of his books and documents by a Treasury attaché so as to enable the appraiser satisfactorily to ascertain the foreign value, export value, or United States value.

We are of the opinion that the affidavits admitted by the court below are not brought within the terms of the prohibition and were, therefore, properly admitted. In the cases now before us the appraiser to his satisfaction has ascertained that the United States value represented the value of the merchandise for duty purposes. The investigation resulting in the issuance of the report of the Treasury attaché was not ordered until after the appraisement, and, in fact, not until after appeals to reappraisement had been filed. The Treasury attaché was instructed to ascertain particularly whether steel tubing was sold in the home market and in other foreign countries in less than 20-ton lots and to obtain samples of said tubing so that a laboratory analysis thereof could be used to compare with the imported product. In our opinion section 402 (b) prohibits affidavits of persons in foreign countries being used as evidence when such persons refuse to cooperate with the Government in its endeavor to establish a value for duty purposes. In the reappraisements before us the appraiser had no such trouble in ascertaining a value.

The same situation arose where the Government counsel made the same objection in the case of *Vita Food Products, Inc., et al.* v. *United States*, Reap. Dec. 3790, 69 Treas. Dec. 1367. The court there stated:

As to the appeals covering shipments from the factory of Arnold Sorensen, Government counsel objected on the trial of the issue to the admission in evidence of an affidavit executed by one A. Lifschitz before the United States vice consul at Riga, and offered by counsel for the plaintiffs, upon the ground that the affiant had refused to permit the Treasury representative to examine his books or records. With reference to this affidavit, which refers to merchandise manufactured and sold by the firm of Arnold Sorensen, examination of the report of the Treasury representative, Collective Exhibit 7, shows that the affiant refused to permit inspection of his books or records by the Treasury representative, but a careful reading of subparagraph (b) of section 402, by virtue of which the objection was made, is convincing that the objection of the Government to the admissibility of this affidavit on the ground that the affiant refused to permit such Treasury representative to inspect his books or records is not well founded, since the situation presented by the official record and these appeals shows clearly that as to none of the merchandise involved did the appraiser fail to find either a foreign, export, or United States value, but on the contrary based his findings in each instance on what he believed to be the foreign values of such or similar merchandise as that involved on the respective dates of shipment from Riga.

After careful consideration of the assignments of error we conclude that the court below committed no error to justify a reversal of the judgment rendered.

We therefore make the following findings of fact:

1. That the merchandise herein consists of steel tubing exported from Krefeld, Germany, from November 7, 1935, to March 13, 1937.

2. That said tubing is of three kinds, to wit, turned and unturned, and thick-walled tubing; that the turned tubing is indicated on the invoices by the German word "geschalt" and when not so indicated the tubing is not turned; that tubing with thick walls is less expensive than thin-walled tubing because of the extra cost of skilled labor in the manufacture of the latter.

3. That such or similar merchandise is not sold or freely offered for sale for home consumption in Germany, or for export to countries other than the United States.

4. That said tubing is specially made for each of the American customers of the plaintiff according to separate specifications requiring special smelting.

5. That no steel tubing is kept in stock by plaintiff, who is the exclusive agent of the German manufacturer, and acts solely as agent in obtaining and forwarding orders for steel tubing for execution and delivery based upon particular specifications, and that upon receiving the same the plaintiff delivers said tubing direct to the particular customer.

6. That there is neither a foreign, export, or United States value for the merchandise, and the value thereof for dutiable purposes is applicable under the provisions of section 402 (f) of the Tariff Act of 1930.

7. That the cost of production for said merchandise is the values found by the trial court as to the cost of material, labor, general expenses, preparation for shipment and profit, the total of which is, for the unturned tubing, 27.90 reichsmarks per 100 kilos, and for the turned tubing, 30.15 reichsmarks per 100 kilos.

We hold as matter of law that the correct dutiable value of the merchandise is as set forth in finding of fact 7, and the judgment of the lower court is hereby affirmed.