## UNITED STATES v. CANADIAN NATIONAL RAILWAYS

**No. 5901.**—Invoice dated Montreal, Quebec, May 7, 1940.
Entered at Port Huron, Mich., May 18, 1940.
Entry No. A-2955.

(Decided July 14, 1943)

*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the plaintiff.
*H. V. Spike* and *John J. Gafill* for the defendant.

KEEFE, Judge: This case is an appeal filed by the collector for a reappraisement of 300 linen table napkins, 22″ x 22″, and 108 linen tablecloths, 54″ x 60″, imported from Canada on May 7, 1940. The napkins were invoiced, entered, and appraised at Canadian $2.97 per dozen and the tablecloths at Canadian $1.59 each, 8 per centum sales tax being included in the prices.

At the hearing in Detroit, Mich., there were admitted in evidence the following documents, to wit, exhibit 1, a certified copy of a Treasury representative's report together with five exhibits attached thereto, numbered 1, 2, 3, 4, and 5; exhibit 2, a letter from Dupuis Freres, Ltee., addressed to the United States Customs Service; exhibit 3, a letter addressed to D. J. O. Meyers, Customs Agent, signed by E. Titt, Assistant Purchasing Agent of the Canadian National Railways; and exhibit 4, a napkin bearing the crest: "Canadian National System" surrounded with a maple-leaf design, representative of the napkins here imported.

The Treasury representative's report disclosed that proposals were submitted on February 6, 1939, for the purchase of 50,000 table napkins, the successful bidders being Dupuis Freres, Ltee., Robert Simpson Co., Ltd., and T. Eaton Co., Ltd., of Montreal, Canada. The order was filed on March 20, 1939, being divided among these firms who caused the articles to be manufactured by several manufacturers of linen located in Belfast, Ireland; that on June 30, 1939, an order for 4,800 tablecloths, 54″ x 60″, at $1.41 each was placed with Robert Simpson Co., Ltd. Delivery was made to the Canadian National Railways at an undisclosed date and the merchandise was deposited in its warehouse. A part of such merchandise was shipped from the warehouse to its own company in Battle Creek, Mich., and forms the merchandise here under consideration.

The customs representative reported that he was unable to find any evidence of sales or offers to sell which would tend to establish an export value. As to the Canadian foreign value the only evidence reported was from the firm of Henry Morgan & Co., Ltd., who placed

an order with an Irish manufacturer for 30 cloths, to cover a sale made on April 4, 1940, to McGill University, at a price of $13.50 Canadian, each, plus 2 per centum city sales tax. The cloths were 84″ x 84″ and such cloths sold at retail at $16.57 each, the McGill University receiving a reduction of 20 per centum from the counter price and that if sold in quantities the discount would be 30 per centum. According to the photostatic copy of the sales slip, the bill was dated November 4, 1940. The order was placed with the Irish manufacturer on March 29, 1940, and evidently an acceptance received on April 4. These cloths measuring 84″ x 84″ were more than twice as large as the tablecloths here before us and there is nothing to indicate that they were comparable in quality. There is nothing appearing in the report to show that Henry Morgan & Co. ever freely offered for sale such or similar cloths to those here imported at or anywhere near the date of exportation. The representative also ascertained from the books of Henry Morgan & Co., Ltd., that linen had increased over pre-war values as follows: December 1939, the increase was 25 per centum; January 1940, an additional 10 per centum; and between January 1940 and October 1940 there was a further increase of from 65 to 80 per centum. However, the actual increase in May 1940 was only 35 per centum as the cloths then being sold were purchased in January and February.

On October 18, 1940, the representative purchased a 22″ x 22″ napkin from Henry Morgan & Co., Ltd., for Canadian $1.10, said to be of the same quality as the merchandise here imported, but the pattern was of a regular conventional design, not floral or crested. It was marked exhibit 3 of the report.

The representative interviewed Mr. M. Martin of Robert Simpson Co. but found that no sales of a similar product had been made during 1940. Mr. H. McGee of T. Eaton Co., Ltd., also had made no sales, although he had quoted a price in July 1940 of $5.63 per dozen for napkins 22″ x 22″ in quantities of 40,000 to the Canadian National Railways which was rejected, and in October of that year, a price of $4.85 in quantities of 1,000 dozen was also rejected.

Respecting the cost of production the report of the customs representative discloses that copies of bids, orders, and other correspondence were attached to the report as exhibits 4 to 4–R inclusive and exhibit 5. The report shows that Robert Simpson Co., Ltd., on March 20, 1939, sold 12,500 22″ x 22″ napkins at $2.79 per dozen, and on June 30, 1939, 4,800 tablecloths 54″ x 60″ at $1.41 each; that T. Eaton Co., Ltd., on March 20, 1939, sold 12,500 table napkins 22″ x 22″ at $2.78 per dozen; and that Dupuis Freres, Ltee., on March 20, 1939, sold 25,000 table napkins 22″ x 22″ at $2.86 per dozen. Robert Simpson Co., Ltd., sold such goods at 5 per centum over the cost and that such was the usual profit taken by firms in sales of

such material, and the overhead of such company would be less than 5 per centum. Henry Morgan & Co., Ltd., informed the customs representative that when ordered in large quantities, there is no difference in price in crested linen and linens of ordinary design.

Exhibit 2 discloses that Dupuis Freres, Ltee., informed the appraiser at Port Huron that the cost of linen damask cloth, 72″ x 72″, at the time of contract and arrival was $2.13⅜, duty paid, delivered to the Canadian National Railways, and that such cloths were sold to the company at $2.27, all taxes included, f. o. b. their warehouse in Montreal; that the cost of napkins, 22″ x 22″, was $2.59 per dozen and the selling price $2.75 per dozen; and that the cloths and napkins were all first quality and the price was the same as similar goods bought for retailing per unit or per dozen. That the cost in July 1940 was unknown, but it was rumored that there had been an increase of 100 to 150 per centum.

Exhibit 3 disclosed that Assistant Purchasing Agent E. Titt, of the Canadian National, informed Customs Agent Meyers on June 26, 1940, that all Irish linens were purchased in the open competitive market; that the last purchase was made on March 20, 1939, consisting of 50,000 napkins divided between three firms at a price of $2.75 per dozen, including sales tax. In commenting upon present-day prices Mr. Titt stated:

Undoubtedly the present-day value of these napkins purchased March 20, 1939, has been considerably enhanced due to the extraordinary conditions prevailing in the linen trade due to war conditions but to give the actual present-day market value, it would be necessary to take competitive prices by tender. Some indication as to the rising value of linens may be gathered from the fact that on March 30, 1940, a representative of Messrs. Wm. Ewart & Co., Linen Manufacturers of Belfast, Ireland, was in town visiting the T. Eaton Co. and for estimating purposes advised that our linen cloths and napkins might be considered as having advanced approximately 128%.

Archie McKenzie, acting appraiser at Port Huron, testified that he made the appraisement of the napkins and tablecloths in question. When shown a napkin of crested linen, exhibit 4, the witness stated that it was representative of the importation; that a crested linen had a name, or something similar to a name that is plainly interwoven by the weavers when making up the article; that the floral design as well as the name was included in the cresting; and that these particular linens are known as crested linens because they have the name of the railroad woven into them. When shown the napkin that had been purchased by the customs representative, marked exhibit 3 and a part of exhibit 1, the witness testified that from the feel of it he would say it was practically identical as to quality, but not being a crested linen it was not similar; that the tablecloths imported herein were also crested with the Canadian National Railway emblem and had a maple-leaf design interwoven as well as the date of manufacture

"1939"; that in making his appraisement he took into consideration the crest; that he was influenced in making his appraisement solely by the fact that the tablecloths were made unfit for any other use by the crest and such articles would not be commercially interchangeable with any other cloth. The witness further testified as follows:

It was my opinion at that time, and still is, that there is no statutory foreign market value, no statutory export value, no statutory United States value; that they are practically a made to order product, and should be appraised, if possibly can be ascertained, on the cost of production basis. With that in view, there are difficulties in the way of establishing cost of production basis. It is an Irish product. It entered the commerce of Canada. The nearest you can do would be to come as near as we could to a cost of production basis by taking the price in Montreal as in effect a cost of production, and appraise this merchandise under Section 501–A. Feeling there was no statutory basis of appraisal that could be established, owing to the crest on that merchandise, I found it impossible for any other use. * * *. [Record pages 13 and 14.]

* * * * * * *

Judge KEEFE. Therefore the value in Canada is the value you figured that should be taken for it?

The WITNESS. Yes.

By Mr. GAFILL:

X Q. When you say the value in Canada, you took into account the features to which you have drawn our attention?

A. Surely.

X Q. And concluded there being no interchangeability, that you would have to persist in your best judgment as to the value?—A. Yes, under section 501 (a).

X Q. This napkin (cloth) is 54 by 60, is it?

A. That is what it should be.

X Q. That was the importation that is in question, the size of the napkins (cloths)?—A. Yes.

X Q. Do you know whether tablecloths generally are of that size or not?— A. According to the best of my knowledge and belief, they are not commercially sold in that size.

X Q. And you took that into consideration also?

A. Yes, sir. [Record page 17.]

At the conclusion of plaintiff's testimony the defendant moved to dismiss the appeal because of the failure to establish the market value or price of the merchandise at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States. In that regard it was argued that the linen used as a sample purchase was not shown to have been purchased in the ordinary course of trade or in the usual wholesale quantities, or that it was especially designed linen adaptable and used by only one customer. The motion to dismiss was taken under advisement. Section 501 (a) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, in

case of an appeal for a reappraisement directs this court "in every case, * * * after affording the parties an opportunity to be heard on the merits, determine the value of the merchandise from the evidence in the entry record and that adduced at the hearing." The motion to dismiss is therefore denied.

The defendant offered in evidence an affidavit of the acting customs agent for the Canadian National Railway Co., admitted over objection as exhibit 5, for the purpose of showing the original price paid for the imported merchandise, and a tablecloth, 54" x 60", was marked in evidence as exhibit 6.

Russell Keith, agent of the Sleeping and Dining Car Service of the Canadian National Railway, testified for the defendant that the linen represented by exhibits 4 and 6 bears the design of the Canadian National Railway and is used by them on their dining cars. The customs broker who made the entry for the defendant also testified that he knew that the maple leaf was the design adopted by the Canadian National Railway.

The Government contends that the price in Montreal adopted by the appraiser as the cost of production is not the cost of production of the articles in Ireland, and the mere statement of the fact refutes the valuation of the appraiser; that the record discloses that the linen napkin, a part of exhibit 1, and the napkins here imported, are practically identical "outside of the fact that exhibit 4 was a crested linen." It is argued that the tablecloths and napkins at issue are used on the table during the service of meals in like manner as other tablecloths and napkins not bearing a crest and therefore if the quality of the table linens is the same and they are used in the same manner, the commercial value thereof should be the same, irrespective of whether or not one bears a crest of a railroad and is used solely by it and the other is sold and used generally.

It is further contended that the evidence establishes that the value of the table napkins in Canada, as quoted in July 1940, was $5.63 Canadian per dozen, and that the value of the tablecloths had increased in 1940 from 65 to 80 per centum over the 1939 prices; that a dealer in Montreal estimated that the cost of such linens had increased from 100 to 150 per centum, and that interdepartmental correspondence of the defendant disclosed that the present-day value of napkins purchased in March 1939 had considerably increased in value, to wit, 128 per centum.

The Government therefore urges that the value for duty purposes has been established as $5.63 Canadian per dozen for the napkins, and that the value of the tablecloths is represented by the appraised value plus 128 per centum, or $3.62 Canadian each.

The defendant contends that the Government has failed to sustain its burden of proof.

A careful consideration of the evidence fails to substantiate the values contended for by the Government. There is no evidence that offers were freely made and accepted of similar tablecloths or napkins at or near the date of exportation of the merchandise herein. The sale to McGill University of 30 tablecloths, over twice as large as the cloths here in question, at 20 per centum less than the retail price, is no evidence of the foreign value of the cloths before us. It might here be noted that order was placed April 4, 1940, and delivery was made on November 4. Respecting the purported increase in the 1940 prices over the prices of linens in 1939, I am unable to find any offers of sale or sales at such increased prices. A careful consideration of all of the documentary evidence fails to disclose anything to establish a statutory foreign value of tablecloths of the size and quality, similar to the tablecloths here imported, or of the napkins. Any offers made for napkins were rejected. In analyzing these offers, I find that there is nothing to indicate that the firm making the same had stock on hand to fill them even if accepted. From all that appears, the goods would have to be manufactured in Ireland and imported several months later, and there is nothing to indicate that the price offered did not reflect an expected later increase in prices. The purchase of a single napkin by the customs representative at $1.10 Canadian is incompetent to establish the statutory foreign market value.

Here we have crested linens, not adaptable for use by any one other than the purchaser, and in the ordinary course of trade such linens are not commercially interchangeable with ordinary linen tablecloths or napkins and therefore fail to come within the definitions of "similar merchandise" as announced by the courts. See *United States* v. *Closson*, 12 Ct. Cust. Appls. 470, T. D. 40669; *United States* v. *Massin*, 16 Ct. Cust. Appls. 19, T. D. 42714; *United States* v. *Wecker*, 16 Ct. Cust. Appls. 220, T. D. 42837; *Scharf* v. *United States*, 16 Ct. Cust. Appls. 347, T. D. 43089; and *United States* v *Kraft*, 26 C. C. P. A. 224, C. A. D. 21.

I am convinced that there is no foreign, export, or United States value for the merchandise. As to the cost of production, the value adopted by the appraiser, in the absence of any other evidence is, under the statute, presumptively correct.

For the reasons stated, judgment will be entered in favor of the defendant, sustaining the values returned by the appraiser, in accordance with section 501 (a), as the presumptively correct values.