FRANK P. DOW CO., INC., OF LOS ANGELES v. UNITED STATES

**No. 7645.**—Invoice dated Mexico City, Mexico, April 2, 1945.
Certified April 3, 1945.
Entered at Los Angeles, Calif., May 16, 1945.
Entry No. 4005.

(Decided January 14, 1949)

*Lawrence, Tuttle & Harper (George R. Tuttle* and *Charles J. Evans* of counsel) for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Joseph E. Weil, Daniel I. Auster, William J. Vitale,* and *Richard F. Weeks,* special attorneys), for the defendant.

CLINE, Judge: This is an appeal for reappraisement of certain merchandise described in the invoice as picture frames and pictures exported from Mexico on April 28, 1945. It was invoiced, entered, and appraised as follows:

| Description | Invoiced Mex. cur. | Entered Mex. cur. | Appraised Mex. cur. |
|---|---|---|---|
| Picture frames and pictures, singles, 5 x 7 | 22.50 | 35.00 | ·47.50 |
| Picture frames and pictures, doubles, 8 x 10 | 40.00 | 55.00 plus 3% tax | 70.00 packing included, plus 3.3% |

At the trial plaintiff called Donald G. MacDonald, organizer of the Sales Forces Distributing Co., and doing business under the name of Canvas Photo Enlarging Co., the importer herein. He produced an article representative of the imported merchandise, which was received in evidence as plaintiff's exhibit 1. It consists of a cut-out photograph of a young girl, which has been colored and mounted on a piece of

wood carved to fit the form of the photograph in such a way as to make the portrait appear three-dimensional. The picture is inside a carved wooden frame, enclosed in glass front and back, and mounted on a carved wooden base. Mr. MacDonald stated that in its construction, arrangement, and materials it is completely representative of the imported merchandise except that it depicts a different person or face than did the articles on the invoice.

Mr. MacDonald testified that these articles are referred to as sculptured portraits; that to obtain orders he shows a sample to a prospective customer; that an order is taken for the same type of work from a photograph of some member of the family; that the photograph is sent to the firm in Mexico City where the imported article is manufactured and returned to him; that he had been importing goods of this character for 3 years; that all of the importations consisted of photographs of different individuals except that occasionally a father and daughter would each order one of the same person; that sculptured photographs of the same individuals as were covered by this importation were not being sold by other firms in the United States; that he did not pay the invoice unit prices of 22.50 pesos for the singles and 40 for the doubles; that he paid 35 pesos for the singles and 55 for the doubles; that the singles contained a photograph of one person and the doubles consisted of two photographs of different persons in one frame.

On cross-examination Mr. MacDonald testified that he paid the same price for singles or for doubles, irrespective of whether the photographs were of blonds or brunettes; that the photographs were all retouched, but that the price of 35 pesos for singles and 55 for doubles included everything; that there was no extra charge of any kind.

There was received in evidence as plaintiff's exhibit 3 an affidavit of Victor Manuel Cruz, which states that the affiant is the manager of Retrate Escultura "Victor" in Mexico City; that said company is the manufacturer of certain wood photographs or portraits sold and shipped to the Canvas Photo Enlarging Co.; that each photograph is specially prepared for the person ordering it; that it is never sold to anyone except to the person ordering it; that it is not sold or freely offered for sale in Mexico for home consumption or for export to the United States. The affidavit then lists the items making up the cost of production. It contains the following description of the method of manufacture:

Said wood photographs or portraits are prepared and manufactured only in pursuance of orders placed in the United States and in accordance with photographs and specifications accompanying said orders, so as to represent the exact likeness of the person photographed with respect to his pose, physiognomy, costume and other visible characteristics, and every picture is different because

it portrays a separate and different individual. In producing these portraits, the subject's face and upper part of the body are cut out of the photograph which accompanies the order. The figure so cut out is mounted upon a backing of wood which has been carved in bas-relief to fit the form cut out of the photograph. The photograph is then painted by artists, who color it in accordance with specifications accompanying the order. Each wood photograph is specially prepared for use of a single person in the United States ordering it.

At a subsequent hearing there were received in evidence, as plaintiff's exhibit 6 (a) and 6 (b), an affidavit purportedly of one Jose Espinosa Ballantin, which is signed J. Espinosa B., and a wood photograph. The affidavit states that the affiant produces wood portraits from photographs furnished by the client; that he believes his productions are of the same kind or general character as those produced by Retrate Escultirna "Victor"; that in fixing the selling price of his productions, he ordinarily adds a profit of 20 per centum to the cost of materials, fabrication, and overhead; that a sample of the wood photographs produced by him accompanies the affidavit; that it is marked with a seal at the base of the picture. Exhibit 6 (b) consists of a wood portrait similar in construction to exhibit 1, but of a different individual.

There were then received in evidence, as plaintiff's exhibits 7 (a) and 7 (b), an affidavit of Rodolfo Arrivillaga and a wood photograph. The affidavit states that the affiant produces wood portraits from photographs furnished by clients; that he believes they are of the same kind or general character as those produced by Retrate Escultirna "Victor"; that he ordinarily adds a profit of 25 per centum to the cost of materials, fabrication, and overhead; that a sample wood photograph accompanies the affidavit; that it is marked "Foto-Escultura 'Mexican Art'." Exhibit 7 (b) consists of a wood portrait similar in construction to exhibit 1, but of a different individual.

Defendant offered in evidence three reports of customs agents. The first (defendant's exhibit 8) is a report of Treasury Representative D. J. DeLagrave, dated July 15, 1945. It states that Mr. DeLagrave interviewed Victor M. Cruz, proprietor of Retrato Escultura "Victor"; that Mr. Cruz stated that the merchandise, wood photographs, is freely offered to all purchasers for exportation to the United States at the same price; that his business in Mexico is with consumers who want portraits of themselves and who pay 35 pesos for a single figure portrait and 55 for a double figure portrait; that he sells at wholesale to other photographers or dealers who buy for resale; that no difference is made in the selling price on account of the size of the purchase; that the prices to wholesale customers are 22.50 pesos for a single figure portrait with frame and 40 pesos for a double figure portrait with frame; that when special painting and retouching is asked for, the singles are priced at 35 pesos and the doubles at 55 pesos.

Defendant's exhibit 9 is a report of Treasury Representative J. Eug. Cauchon, dated January 29, 1948. It states that Mr. Cruz was positive about his selling prices which were as follows: For ordinary photographs, 22.50 pesos for singles and 40 for doubles, and for special photographs, 35 pesos for singles and 55 for doubles; that the special photograph had a superior finish, a finer execution, and carried a guarantee of complete satisfaction or replacement by a new photograph; that the additions for the specials were included in the selling prices of 35 and 55 pesos.

Defendant's exhibit 10 is a report of J. Eug. Cauchon, dated February 13, 1948, in regard to an interview of Jose Espinosa Balbontin in which Mr. Espinosa stated that he had opened his own studio in 1943; that he had never sold any photographs for exportation to the United States nor did he sell at wholesale; that his work was done on orders of one or two photographs for individual consumers; that he had no regular books of account; that from memory and from his personal experience, he quoted the average cost of each photograph as 26.90 pesos; that he had two selling prices, 30 pesos for ordinary photographs and 35 for specials.

Plaintiff contends that the proper basis for reappraisement is the cost of production, since each of the articles is specially made to order from an individual photograph and is sold only to the person ordering it; that therefore there is no foreign, export, or United States value because no "similar" merchandise was being offered for sale. Defendant maintains, however, that even though each portrait represents a different person, all of them are similar to other sculptured portraits made and sold both for domestic consumption in Mexico and for export to the United States.

It is apparent from the record and exhibits that each sculptured portrait was manufactured in a similar manner, of similar materials, and at similar cost, and that the only difference is that each is a picture of a different individual. Each portrait was made from a photograph submitted by the customer and according to his specifications. While the articles are of the same general character, they are not interchangeable, since the customer orders a portrait of a particular individual and cannot be expected to accept a picture of some other person totally unknown to him.

The meaning of the word "similar" for tariff purposes has been passed upon in numerous cases. In *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714, it was held that imported black silk hatters' plush was not similar to that sold in the German home markets, since the former was used for making "blocked and men's silk hats," while the latter was adapted to use for general millinery purposes, in draping ladies' trimmed hats, and that the goods were not interchangeable. The court said (p. 25):

In view of the common meaning of the word "similar" and of the authorities cited, we are of opinion, and so hold, that if goods are made of approximately the same materials, are commercially interchangeable, are adapted to substantially the same uses, and are so used, ordinarily, they are similar, within the meaning of section 402 (b). The importer or foreign manufacturer may not, by making a few changes in structure, or in giving the product a new name, or by restricting its sale to the American purchaser only, *ipso facto* remove his merchandise from section 402 (b), the foreign value provision.

In *United States* v. *Wecker & Co.*, 16 Ct. Cust. Appls. 220, T. D. 42837, the goods were held not to be similar since they were not made of approximately the same material, were not processed in the same manner, and delivery of one would not be accepted as good delivery for the other. In *Scharf Bros. Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 347, T. D. 43089, it was stated that a thing might be similar chemically but still not similar within the meaning of the tariff act. However, two types of rock candy were held similar since there was but one use for both articles; they were made by exactly the same methods, were of approximately the same value, were identical in chemical composition, had the same taste, color, and other qualities, and were therefore commercially interchangeable. In *United States* v. *F. Vietor & Achelis*, 17 C. C. P. A. 412, T. D. 43864, it was held that two types of ribbon were not similar since one was superior to the other, being worth at least 20 per centum more than the other. In *United States* v. *Kraft Phenix Cheese Corp.*, 26 C. C. P. A. 224, C. A. D. 21, it was held that "Standard" and "Portion" Roquefort cheese were not similar although made of the same materials, since there was a difference in method and a difference in the properties of the two, i. e., "Standard" crumbles when cut and "Portion" does not.

In *United States* v. *Thomas & Co.*, 21 C. C. P. A. 254, T. D. 46788, it was held that bobbins and tubes which were not mechanically interchangeable were nevertheless "similar" within the meaning of the tariff act. The court said (p. 259):

* * * While the record shows that certain American manufacturers and Czecho-slovakian manufacturers could not use on their particular spindles tubes having a taper not designed to fit the spindle of their machines, and that they would not accept, as a compliance with their orders, tubes made with a taper which did not fit, it also is shown that others, there and here, could use tubes with such a taper, and when used, all were used for the same purpose; that each of the compared articles is made from the same material, by the same processes, and when finished has no material differences which would render them dissimilar for valuation purposes. Whether goods sold in the foreign market are similar to those imported cannot always depend upon whether the foreign goods would be accepted as a compliance with an order by the user of the imported goods. That test might require that the goods be identical and the requirement of the statute is only that the goods be similar. Certainly the equality in value and similarity in cost of production, under the circumstances of this case, were very pertinent and material considerations in determining similarity.

On the other hand, it has been held that where merchandise is made specially according to the requirements of the customer or is not adaptable to use by anyone else, it does not fall within the definition of "similar" merchandise. *Kronfeld, Saunders, Inc.* v. *United States*, 62 Treas. Dec. 597, T. D. 46020; *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.*, 6 Cust. Ct. 832, Reap. Dec. 5161; *United States* v. *Canadian National Railways*, 11 Cust. Ct. 365, Reap. Dec. 5901.

The *Kronfeld* case involved boots and shoes made to measurements furnished by the customer and it was held that no foreign, export, or United States value could be found since no boots and shoes made to such measurements were freely offered for sale to anyone except the purchaser who placed the order.

In *United States* v. *Hensel, Bruckmann & Lorbacher, Inc., supra*, it was held that no foreign, export, or United States value could be found for steel tubing which was manufactured according to specifications furnished by the customer. It appeared that each had different requirements as to the hardness of the material, the size, the length of the tubing, and the tolerance specifications; that tubing specially manufactured for the requirements of one customer could not be sent to another.

*United States* v. *Canadian National Railways, supra*, involved table linen bearing the crest "Canadian National System." The court held that no foreign, export, or United States value existed, stating (p. 370):

Here we have crested linens, not adaptable for use by any one other than the purchaser, and in the ordinary course of trade such linens are not commercially interchangeable with ordinary linen tablecloths or napkins and therefore fail to come within the definitions of "similar merchandise" as announced by the courts. See *United States* v. *Closson*, 12 Ct. Cust. Appls. 470, T. D. 40669; *United States* v. *Massin*, 16 Ct. Cust. Appls. 19, T. D. 42714; *United States* v. *Wecker*, 16 Ct. Cust. Appls. 220, T. D. 42837; *Scharf* v. *United States*, 16 Ct. Cust. Appls. 347, T. D. 43089; and *United States* v. *Kraft*, 26 C. C. P. A. 224, C. A. D. 21.

In the instant case, while no customer would accept, as compliance with his order, a portrait made from a different photograph than the one he submitted, nevertheless the articles were made from the same material, by the same processes, and when finished had no material differences which would render them dissimilar for valuation purposes. They are therefore similar. *United States* v. *Thomas & Co., supra*.

The merchandise herein was appraised on the basis of foreign value at 47.50 pesos for single portraits and 70 pesos for doubles, packing included, plus 3.3 per centum. It was entered at 35 pesos and 55 pesos, respectively, plus 3 per centum. The 3 per centum or 3.3 per centum is apparently a luxury tax levied by the Mexican Government. (Defendant's exhibit 8, p. 5.)

Plaintiff contends that the appraiser's figures are not supported by the record and do not represent the foreign value of the merchandise.

According to the report of Treasury Representative DeLagrave (defendant's exhibit 8), Mr. Cruz (the manufacturer of the imported merchandise) sold at wholesale to dealers who bought for resale at prices of 22.50 pesos for singles and 40 pesos for doubles, except that where special painting and retouching was done the singles were priced at 35 pesos and the doubles at 55; that no difference in price was made on account of the size of the orders; that prices to consumers were 35 pesos for singles and 55 for doubles (apparently for the ordinary photographs).

The report of Treasury Representative Cauchon (defendant's exhibit 9) contains the following:

Mr. Cruz was positive about one thing and that was his selling prices, which were as follows:

|  | Singles | Doubles |
|---|---|---|
| Ordinary | Mex. $22. 50 | Mex. $40. 00 |
| Special | " 35. 00 | " 55. 00 |

As far as he recalled, the "Specials" were sold to Los Angeles only. The difference between the two articles was one of quality, workmanship and materials. The "Special" article had a superior finish, a finer execution into the minutest details, facial expression, coloring, etc and it carried a guarantee of complete satisfaction or replacement by a new photograph. No such guarantee was given with the ordinary photographs.

Mr. Cruz said that this guarantee may be confirmed from letters in the hands of the Los Angeles importer. His own copies of such letters have been destroyed. Specifically referring to consular invoice No. 4488, new invoice 7388, Mr. Cruz said that the selling prices of the 26 singles and 5 doubles were Mex. $35.00 and 55.00 respectively, and not Mex. $47.50 and 70.00 as appraised. The additions for the "special job" are already included in the selling prices of Mex. $35.00 and 55.00.

Mr. Espinosa, another manufacturer of this type of merchandise, stated that his prices were 30 pesos for ordinary photographs and 35 for specials and that he did not sell at wholesale.

At the trial Mr. MacDonald testified that the prices of 35 pesos and 55 pesos included everything; that there was no extra charge for retouching.

It appears from the record that the merchandise was being sold and offered for sale at 35 pesos for single portraits and 55 pesos for doubles, rather than at the appraiser's valuation of 47.50 pesos and 70 pesos, respectively.

On the record herein I make the following findings of fact and conclusions of law:

(1) That the merchandise consists of cut-out photographs, colored and mounted on wood, each set inside a wooden frame with glass front and back and mounted on a carved wooden base, exported from Mexico on April 28, 1945.

(2) That each article is similar to the other imported articles and to others sold or offered for sale in the country of exportation.

(3) That the foreign value as that value is defined in section 402 (c) of the Tariff Act of 1930 is the proper basis for determining the value of the merchandise herein.

(4) That the dutiable foreign value is 35 pesos for single portraits and 55 pesos for double portraits, packing included, plus 3.3 per centum.

Judgment will be rendered accordingly.