KENNETH KITTLESON v. UNITED STATES

No. 7953.—

Entry No. 174.

(Decided February 13, 1951)

Hampton, Bull & Crom (Frank R. Crom and John W. Bull of counsel) for the plaintiff.

David N. Edelstein, Assistant Attorney General (Joseph E. Weil and Harold L. Grossman, special attorneys), for the defendant.

Rao, Judge: This is an appeal for reappraisement of an importation from Havana, Cuba, of 2,326 cartons of hard sugar candy, each carton containing four 10-pound bags. The merchandise was entered at 11¼ cents per pound, net packed, and appraised at 17½ cents per pound, net packed. According to the information supplied by the importer on the consumption entry filed by him, the merchandise was exported from Cuba on October 24, 1946.

It appears from the record that the plaintiff above named was the customs broker who acted for and in behalf of E. W. Rollow & Co., the ultimate consignee, in entering the instant merchandise. He was not called upon to give, nor did he supply, any testimony pertinent to the basic issues here involved.

Mr. E. W. Rollow, a food broker from Nashville, Tenn., of E. W. Rollow & Co., the ultimate consignee of the instant merchandise, testified in behalf of plaintiff. He stated that he placed the order for the merchandise with the Cuban manufacturer, Industrias Alimenticias, on August 25, 1946, for delivery at his option to November 15, 1946; that the merchandise was shipped from Cuba on October 25, 1946; that he received it on or about October 30, 1946; but that he sold it to a wholesale grocer on September 16, 1946, that is, prior to its importation; that between the date of the order and the date of entry, to wit, on August 29, 1946, he received a cabled offer of candy of this type from Dussaq & Co. of Havana, who acted as selling agent for the Cuban Candy Manufacturing Corp., at $12.20 per 100 pounds f. o. b. Havana. The cable containing this offer was received in evidence as plaintiff's exhibit 1. There were also received in evidence as plaintiff's collective exhibit 2, two cables from Industrias Alimenticias, one dated August 25, 1946, confirming an offer of 93,055 pounds of hard candy at 12.25 cents per pound c. i. f. Tampa, and the other dated August 27, 1946, agreeing to ship 93,055 pounds of hard candy by the middle of November at 12.25 cents per pound, c. i. f. Tampa.

Mr. Rollow testified further that during the period of the war, he imported some 20 carloads of the same type of cheap hard sugar candy; that the sale of that merchandise in the United States was controlled by the Office of Price Administration; that according to the order of that office (plaintiff's exhibit 3), the price to wholesalers was fixed at 14½ cents per pound f. o. b. port of entry; that control of the price was lifted approximately October 30, 1946; and that thereafter he purchased candy in Cuba at 20 cents a pound f. o. b. Cuba.

There was offered in evidence plaintiff's exhibit 4, an affidavit of one Jose Luis Lescano, the liquidator of Industrias Alimenticias, S. A., of Havana, Cuba, which affidavit was verified April 1, 1949. The affiant therein stated that on or about October 25, 1946, the Cuban company shipped 2,326 cases of Cuban hard candy, invoiced at 12¼ cents per pound, c. i. f. Tampa, to E. W. Rollow & Co. of Nashville, Tenn., in care of Kenneth Kittleson, Tampa, Fla., and that candy of that quality was not sold in Cuba, but was manufactured solely for exportation. Said affidavit contains the following statement:

Affiant further says that he knows of his own knowledge that such or similar candy was freely offered for sale to all purchasers in the principal markets of Cuba, in the usual wholesale quantities, and in the ordinary course of trade, for export at that time, to the United States, at between 12¼¢ and 12½ per Lb. C. I. F. Port of Entry in the United States, and that all of said candy manufactured by said company for export was of a different type from the Cuban hard sugar candy being manufactured and offered for sale for home consumption in the markets of Cuba.

Plaintiff sought to offer, in addition, an affidavit of one Pedro R. Arellano, who was the manager of Industrias Alimenticias, S. A., of Havana, Cuba, at the time of exportation of the instant merchandise. Its admission into evidence was objected to by counsel for the Government, the objection being predicated upon a report of Joseph H. Dillon, Treasury representative in charge, dated November 24, 1947 (defendant's exhibit A), which reveals that the affiant consistently refused to grant an interview to the Treasury representative. Decision as to the admissibility of the proffered affidavit (plaintiff's exhibit 5 for identification) was reserved by Chief Judge Oliver, before whom the trial was then proceeding.

At a subsequent hearing at Tampa, Fla., plaintiff again sought to offer this affidavit in evidence, together with a second affidavit of the said Pedro R. Arellano (plaintiff's exhibit 8 for identification), which in effect controverts the statements contained in the report of the Treasury representative (defendant's exhibit A). No definitive ruling concerning the admissibility of these affidavits appears of record.

The objection of the defendant to plaintiff's exhibit 5 for identification was predicated upon the provisions of section 402 (b) of the Tariff Act of 1930. Said section reads as follows:

REVIEW OF APPRAISER'S DECISION.—A decision of the appraiser that foreign value, export value, or United States value can not be satisfactorily ascertained shall be subject to review in reappraisement proceedings under section 501; but in any such proceeding, an affidavit executed outside of the United States shall not be admitted in evidence if executed by any person who fails to permit a Treasury attaché to inspect his books, papers, records, accounts, documents, or correspondence, pertaining to the value or classification of such merchandise.

It seems abundantly clear from the language of the quoted section that the restriction upon the admissibility of an affidavit executed outside the United States, based upon the refusal of the affiant to permit a Treasury attaché to examine his books, etc., obtains only in a proceeding against the appraiser's decision that foreign value, export value, or United States value can not be satisfactorily ascertained. The action before me is not of that character. Accordingly, section 402 (b), *supra*, does not govern the admissibility of the exhibit in question. See also *Vita Food Products, Inc., et al.* v. *United States*, 69 Treas. Dec. 1367, Reap. Dec. 3790; *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.*, 6 Cust. Ct. 832, Reap. Dec. 5161; *F. W. Hagemann* v. *United States*, 21 Cust. Ct. 309, Reap. Dec. 7623. Plaintiff's exhibit 5 for identification will be received in evidence as plaintiff's exhibit 5, an exception being granted to the defendant. This decision renders unnecessary any further consideration of plaintiff's exhibit 8 for identification.

A reference to said plaintiff's exhibit 5 reveals that except for the fact that it is based upon the affiant's personal knowledge as manager of Industrias Alimenticias during the period from 1943 to 1948, it is substantially identical with plaintiff's exhibit 4.

Counsel for the plaintiff also offered in evidence the affidavit of T. W. Holt, Sr., the president of Holt Trading Co., Inc., of Jacksonville, Fla. This affidavit was received as plaintiff's exhibit 6, subject to the right of counsel for the Government to cross-examine the affiant. In his affidavit, Mr. Holt stated that on or about October 22, 1946, the Holt Trading Co., Inc., received from Industrias Alimenticias, S. A., of Havana, Cuba, 1,372 cartons of Cuban hard candy, each carton weighing 40 pounds net, at 12½ cents per pound, c. i. f. West Palm Beach, Fla. Attached to said affidavit are copies of the papers filed at the time of entry of said merchandise.

On cross-examination, this witness stated that he believed the OPA decontrolled hard candy about October 26, 1946; that he purchased his merchandise on August 24, 1946; that it was sold about 6 weeks before it was shipped; and that it was entered on November 1, 1946. He stated further that he could not say whether he had any notice from Industrias Alimenticias concerning a change in prices, effective October 21, 1946, nor did he know of such change in prices; that he knew of Charles R. Allen, Inc., of Charleston, S. C., but did not know that that concern had purchased, on October 9, 1946, 1,500 cartons of hard candy, each carton containing four 10-pound bags, for 17½ cents per pound, net, f. o. b. Havana.

Plaintiff's exhibit 7 consists of an affidavit of Rodolfo Ruibal, vice president of Olavarria & Co., Inc., of New York City, wherein it is stated that the records of said company show that on or about October

24, 1946, it received a shipment of Cuban hard candy from Industrias Alimenticias, S. A., in Havana, Cuba, consisting of 415 cartons, each weighing 40 pounds net, at 12¼ cents per pound, c. i. f. Miami, Fla.

In addition, the record contains defendant's exhibit B, a so-called master list of export values of confectionery manufactured by Industrias Alimenticias, S. A., Havana, Cuba, prepared by the Customs Information Exchange of 201 Varick Street, New York 14, N. Y. It indicates a sale of hard candy at 17½ cents f. o. b. Havana to Charles R. Allen of Charleston, S. C., on October 9, 1946, which candy, packed in four 10-pound bags, was exported on December 8, 1946. Said exhibit also lists, among others, a sale on October 26, 1946, to Lombard & Co., New York, at 15 cents a pound, f. o. b. Havana, which merchandise was exported on October 26, 1946. These are the two sales included in the exhibit which are most proximate to the date of exportation of the instant merchandise.

In this, as in all other reappraisement proceedings, the initial question is whether the plaintiff, as the appealing party, has sustained his burden of overcoming the presumption of correctness which adheres to the appraiser's finding of valuation by virtue of section 501 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938. To overcome that presumption, it is incumbent upon the plaintiff to meet every material issue in the case. *Transatlantic Shipping Co., Inc. (Absorbo Beer Pad Co., Inc.)* v. *United States*, 28 C. C. P. A. (Customs) 19, C. A. D. 118; *Harry Garbey* v. *United States*, 24 C. C. P. A. (Customs) 48, T. D. 48332; *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 36, T. D. 43324. As section 402 (a) of said act provides that the value of imported merchandise shall be the foreign or export value, whichever is higher, he must, in the first instance, show these values or the non-existence of either or both. His proof with respect thereto must establish every element entering into their statutory definition as found in subdivisions (c) and (d) of said section. Any omission of these essentials is fatal to his case.

An examination of the record before me reveals that plaintiff has failed in the burden he has assumed. Insofar as the affidavit of Jose Luis Lescano, plaintiff's exhibit 4, is concerned, it is pertinent to note that it recites that the affiant is the liquidator of Industrias Alimenticias, S. A., of Havana, Cuba. It fails to set forth the date when he was appointed to such position, whether or not he had any connection with the company at or about the date of exportation of the instant merchandise, or at any time prior thereto, or any information respecting the sale and distribution of such or similar merchandise either for home consumption or for export. He does not support any of the statements contained in said affidavit by any

facts indicative of the source of the knowledge upon which he allegedly based the statements contained in said affidavit. Under these circumstances, the statements contained in plaintiff's exhibit 4 have little, if any, evidentiary value.

The evidence of the ultimate consignee herein, and of those importers whose affidavits have been supplied by the plaintiff, fails to show that the price paid by any of them was the price at which the merchandise was freely offered for sale to all purchasers in the principal markets of Cuba, in the usual wholesale quantities and in the ordinary course of trade. Each of those witnesses stated only what he paid for his own merchandise, with the exception of the witness Rollow who testified that he had received an offer of the same type of candy from another Cuban manufacturer (plaintiff's exhibit 1). But as to whether that offer obtained as a free offer to all purchasers, or was restricted to the offeree, the record is silent. Moreover, none of these witnesses gave any testimony bearing upon the question of what were the wholesale quantities in which merchandise such as or similar to that before the court was bought and sold, or whether or not the price paid depended upon quantity.

The only evidence purporting to provide the answer to that question is the affidavit of the said Pedro R. Arellano, manager of the Cuban manufacturer during the period of time with which we are here concerned. However, that affidavit merely recites "that such or similar candy was freely offered for sale to all purchasers in the principal markets of Cuba, in the usual wholesale quantities, * * *." This is a conclusion of law concerning which the affiant could not testify. He could have stated the wholesale quantities in which the merchandise was sold, or he could have set forth lists of sales, or offers for sale in wholesale quantities. These are facts, however, which he did not include in his affidavit, and which were not otherwise established. As this was one of the elements which plaintiff was required to prove in order to support his claim of a value different from that found by the appraiser and he has not done so, I must find that the presumption of correctness of that official's action has not been overcome.

I therefore find that:

1. The merchandise involved herein consists of 2,326 cartons of hard sugar candy exported from Cuba.

2. It was entered at 11¼ cents per pound, net packed, and appraised at 17½ cents per pound, net packed.

3. The evidence fails to establish any value for the instant merchandise different from the value returned by the appraiser

The presumptively correct value returned by the appraiser not having been overcome, I conclude that the value of the instant merchandise is 17½ cents per pound, net packed.

Judgment will be entered accordingly.